**BENCON MANAGEMENT & GENER- AL CONTRACTING, INC.,** General Accident Insurance Company of America, and Pennsylvania General Insurance Company, Appellants,

v.

**BOYER, INC.,** Appellee.

No. 14–03–01199–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 21, 2005.

Rehearing Overruled Sept. 29, 2005.

Maurice L. Bresenhan, Jr., Pascal Paul Piazza, Houston, for appellants.

Allison J. Snyder, William Westcott, Houston, for appellee.

Panel consists of Justices ANDERSON, HUDSON, and FROST.

## OPINION

KEM THOMPSON FROST, Justice.

This case arises out of a dispute between a general contractor and a subcontractor who performed work on a city project. The general contractor and the sureties on

the payment bond appeal the trial court's judgment in favor of the subcontractor on its breach-of-contract and bond claims and its claim for interest under Chapter 2251 of the Texas Government Code. The general contractor and sureties challenge the sufficiency of the evidence regarding (1) compliance with certain alleged conditions precedent in the subcontractor's contract, (2) the subcontractor's timely performance of its contract, and (3) the attorney's fee award. The general contractor and the sureties also assert the trial court erred in denying their motion for mistrial based on the subcontractor's alleged violation of an order in limine. We conclude that the subcontractor did not need to prove compliance with the alleged conditions precedent, that the evidence as to the challenged issues is sufficient to support the judgment, and that the trial court did not err in denying the motion for mistrial. Accordingly, we affirm the trial court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Effective February 2, 1999, appellant Bencon Management & General Contracting, Inc. ("Bencon"), as general contractor, entered into a construction contract with the Metropolitan Transit Authority of Harris County, Texas ("Metro"), as owner. Under this contract (the "Prime Contract"), Bencon promised to construct various roadway improvements on Louisiana Street from Lamar to Congress in downtown Houston, including but not limited to reinforced concrete pavement, storm sewers, sanitary sewers, waterlines, sidewalks, traffic signals, provisions for communication conduits, street lighting, tree preservation, tree planting, irrigation, electrical service, and transit amenities (the "Project").

On February 3, 1999, Bencon sent a purchase order to appellee Boyer, Inc., accepting Boyer's bid to be the subcontractor for the tunneling work for the storm-sewer part of the Project. This one-page purchase order and the attached one-page bid submitted by Boyer constitute the subcontract between Boyer and Bencon (the "Subcontract"). The Subcontract states that Boyer will "comply with the project's plans, Specs [sic] and contract conditions issued by Metro to [Bencon] as applicable to [Boyer's] work." The Subcontract also states that Boyer's "[w]ork will take approximately 160 working days to complete end to end, including manholes."

Metro gave Bencon notice to proceed with its work on the Project, effective February 27, 1999. There is evidence that on March 4, 1999, Metro approved Boyer to be the tunneling subcontractor on the project and that, because of difficulties encountered with a live electrical line in a duct at Congress Street, Boyer could not break ground on its tunneling work until May 20, 1999. There is also testimony that Boyer finished its work on March 21, 2000. Because of unexpected problems with "tiebacks" encountered during the tunneling, Metro granted Bencon an extension of 84 calendar days.

Because Bencon had not timely paid Boyer amounts owed under the Subcontract, Boyer sent out statutory notices on the payment bond, as to which appellants General Accident Insurance Company of America ("General") and Pennsylvania General Insurance Company ("Pennsylvania General") are the sureties. Boyer filed this suit, alleging that the Bencon Parties [1] had not paid it more than $200,000 due and

---

1. In this opinion, we refer to Bencon, General, and Pennsylvania General collectively as the "Bencon Parties."

owing under the Subcontract. Not long after Boyer filed suit, Bencon paid Boyer $126,686.80. Nonetheless, Boyer alleged that the Bencon Parties still owed Boyer $62,562 in retainage and $18,774.83 for work under a change order. In addition to asserting this breach-of-contract claim against Bencon and this payment-bond claim against the sureties, Boyer also asserted a claim for interest under Chapter 2251 of the Texas Government Code ("Prompt Payment Claim"). In response, Bencon asserted a counterclaim against Boyer, alleging that Boyer's breach of the Subcontract by its alleged lengthy delay in performing its work thereunder resulted in $533,254.46 in damages to Bencon. The Bencon Parties have not alleged that Boyer failed to complete the work required under its Subcontract or that this work was not performed in a workmanlike manner. After a five-day jury trial, the jury unanimously found as follows:

- Bencon failed to comply with the Subcontract.

- Bencon's failure to comply was not excused by any alleged failure of Boyer to comply with a material obligation of the Subcontract.

- Bencon's failure to comply with the Subcontract resulted in actual damages of $81,336.83 to Boyer.

- A reasonable fee for the necessary services of Boyer's attorneys for preparation and trial is $282,773.33. A reasonable fee for the necessary services of Boyer's attorneys for an appeal to the court of appeals is $20,000. A reasonable fee for the necessary services of Boyer's attorneys for an appeal to the Texas Supreme Court is $40,000.

- Boyer did not fail to comply with the Subcontract by failing to complete the contract within a reasonable time.[2]

The Bencon Parties filed a motion to disregard jury answers and for judgment notwithstanding the verdict. Boyer filed a motion to disregard one jury finding regarding its Prompt Payment Claim. The trial court granted Boyer's motion, denied the Bencon Parties' motion, and except for one disregarded finding regarding the Prompt Payment Claim, the trial court rendered judgment on the jury's verdict. The Bencon Parties' motion for new trial was overruled by operation of law. On appeal, the Bencon Parties challenge the legal and factual sufficiency of the evidence to support some of the jury's findings.

## II. STANDARDS OF REVIEW

In this case, the Bencon Parties preserved error as to their no-evidence issues by their motion for judgment notwithstanding the verdict and by their motion for new trial. Regardless of what motion a party uses to preserve a no-evidence challenge to fact findings, the same standard of review applies. *City of Keller v. Wilson*, 168 S.W.3d 802, 823, (Tex.2005). In analyzing a no-evidence issue, we must consider evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *See id.* at 821. We must credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *See id.* at 827. We must determine whether the evidence at trial would enable reasonable and fair-minded people to find the facts at issue. *See id.* The factfinder is the sole judge of the credibility of the witnesses and the weight

---

2. The jury also made various findings regarding perfection of the payment-bond claim and the Prompt Payment Claim, but those findings are not relevant to this appeal.

to give their testimony. *See id.* at 819. This court must sustain a no-evidence challenge if the record shows one of the following: (1) a complete absence of a vital fact, (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact. *See id.* at 810.

When reviewing a challenge to the factual sufficiency of the evidence, we examine the entire record, considering both the evidence in favor of, and contrary to, the challenged finding. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). After considering and weighing all the evidence, we set aside the fact finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986). The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *GTE Mobilnet of S. Tex. v. Pascouet,* 61 S.W.3d 599, 615–16 (Tex. App.-Houston [14th Dist.] 2001, pet. denied). We may not substitute our own judgment for that of the trier of fact, even if we would reach a different answer on the evidence. *Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 407 (Tex.1998). The amount of evidence necessary to affirm a judgment is far less than that necessary to reverse a judgment. *Pascouet,* 61 S.W.3d at 616.

■ In construing Boyer's obligations under the Subcontract, our primary concern is to ascertain and give effect to the intentions of the parties as expressed in the Subcontract. *Kelley–Coppedge, Inc. v. Highlands Ins. Co.,* 980 S.W.2d 462, 464 (Tex.1998). To ascertain the true intentions of the parties to the Subcontract, we

examine the entire agreement in an effort to harmonize and give effect to all of the provisions of the contract so that none will be rendered meaningless. *MCI Telecomms. Corp. v. Texas Utils. Elec. Co.,* 995 S.W.2d 647, 652 (Tex.1999). When a written contract is so worded that it can be given a certain or definite legal meaning or interpretation, it is not ambiguous, and courts construe it as a matter of law. *American Mfrs. Mut. Ins. Co. v. Schaefer,* 124 S.W.3d 154, 157 (Tex.2003). Whether a contract is ambiguous is a question of law for the court. *Heritage Res., Inc. v. NationsBank,* 939 S.W.2d 118, 121 (Tex. 1996). A contract is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation. *Id.* We cannot rewrite the Subcontract or add to its language under the guise of interpretation. *See American Mfrs. Mut. Ins. Co.,* 124 S.W.3d at 162. Rather, we must enforce the Subcontract as written. *See Royal Indem. Co. v. Marshall,* 388 S.W.2d 176, 181 (Tex. 1965).

### III. ISSUES AND ANALYSIS

#### A. Did Boyer have to prove compliance with various alleged conditions precedent?

■ In their first and second issues, the Bencon Parties assert there is legally and factually insufficient evidence to prove that Boyer complied with various alleged conditions precedent in the Subcontract. Because Boyer pleaded that all conditions precedent to its recovery against the Bencon Parties had been performed or had occurred, Boyer was required to prove only the conditions precedent that the Bencon Parties specifically denied. *See* TEX.R. CIV. P. 54; *Community Bank & Trust v. Fleck,* 107 S.W.3d 541, 542 (Tex. 2002). The Bencon Parties' Second Amended Answer does not contain any

specific denials as to the alleged conditions precedent asserted by the Bencon Parties under their first and second issues. *See* Tex.R. Civ. P. 54; *Coastal Terminal Operators v. Essex Crane Rental Corp.*, No. 14–02–00627–CV, 2004 WL 1795355, at *7 (Tex.App.-Houston [14th Dist.] Aug. 12, 2004, pet. denied) (holding that general statement by defendant denying that all conditions precedent have occurred or been performed is not sufficient under Rule 54 to require plaintiff to prove any alleged conditions precedent) (mem. op.). In their supplemental answer, the Bencon Parties assert the following:

> Plaintiff erroneously now contends that the entire contract between Defendant Bencon (general contractor) and Metro (Owner) somehow applies to Plaintiff (subcontractor) in this case.
>
> In such an unlikely event, Defendants plead that Plaintiff has failed to comply with the following conditions precedent to recovery in this case: [listing various alleged conditions precedent, some of which are asserted by the Bencon Parties under their first and second issues on appeal].

Unless this language constitutes a specific denial of the conditions precedent asserted under their first and second issues, Boyer did not have to prove compliance with these conditions precedent. *See* Tex.R. Civ. P. 54; *Community Bank & Trust*, 107 S.W.3d at 542. In this answer, the Bencon Parties assert that the entire Prime Contract does not apply to Boyer, but that, in the unlikely event that the entire Prime Contract does apply to Boyer, then the Bencon Parties allege Boyer has not complied with various conditions precedent. The trial court never ruled on this issue, and the jury charge takes no position as to how much, if any, of the Prime Contract applies to Boyer's performance under the Subcontract. At trial,

Mark Boyer's testimony indicated that Boyer agreed in the Subcontract to comply with the specifications and contract conditions from the Prime Contract that apply to Boyer's work under the Subcontract. On the other hand, under cross-examination, Tommy Mazingo, Boyer's project manager during part of the Project, testified that the entire Prime Contract applied to Boyer. Notwithstanding this testimony, if the Subcontract is unambiguous, then its construction and interpretation are a question of law to be resolved by this court. *See American Mfrs. Mut. Ins. Co.*, 124 S.W.3d at 157.

■ The Subcontract states, in pertinent part: "Subcontractor to comply with the project's plans, Specs [sic] and contract conditions issued by Metro to the G.C. [Bencon] as applicable to the Subcontractor's work." After considering both the Subcontract and the Prime Contract, we conclude that, as a matter of law, under the unambiguous language of the Subcontract, Boyer promised to comply only with the parts of the Prime Contract that contain project plans, specifications, or contract conditions applicable to Boyer's work. *See Seale v. Roy M. Mitchell Contracting Co.*, 321 S.W.2d 149, 150–51 (Tex.Civ.App.-Austin 1959, writ ref'd) (holding, in Texas Supreme Court precedent, that subcontract did not incorporate dispute-resolution provision contained in prime contract, because subcontract incorporated only the provisions of the prime contract applicable to the performance of subcontractor's work); *LeBlanc, Inc. v. Gulf Bitulithic Co.*, 412 S.W.2d 86, 93 (Tex.Civ.App.-Tyler 1967, writ ref'd n.r.e.) (stating that subcontract that incorporated the provisions of prime contract only "insofar as they are applicable to this Subcontractor" did not incorporate warranty, repair, indemnity, and arbitration provisions of the prime contract into the subcontract); *Patrick J.*

*Ruane, Inc. v. Parker*, 185 Cal.App.2d 488, 497, 8 Cal.Rptr. 379, 385 (1960) (holding that subcontract did not incorporate prime contract's conditioning of right to payment upon issuance of certificate of completion, because subcontract incorporated the conditions of the prime contract "insofar as they are applicable to this particular work"). Because parts of the Prime Contract do not fall into this category, the entire Prime Contract does not apply to Boyer. *LeBlanc, Inc.*, 412 S.W.2d at 93 (stating that subcontract did not incorporate all provisions of the prime contract into subcontract because subcontract incorporated the provisions of the prime contract only "insofar as they are applicable to this Subcontractor"). Inasmuch as the Bencon Parties only pleaded failure to comply with certain alleged conditions in the Prime Contract in the event that the entire Prime Contract applies to Boyer, and because the entire Prime Contract does not apply to Boyer, the Bencon Parties have not specifically denied the alleged conditions precedent in question, and Boyer did not have to prove compliance therewith. *See* TEX.R. CIV. P. 54; *Community Bank & Trust*, 107 S.W.3d at 542. Accordingly, we overrule the Bencon Parties' first and second issues.[3]

**B. Is there legally and factually sufficient evidence to prove that Boyer timely performed under the Subcontract?**

■ In their third, fifth, and seventh issues, the Bencon Parties assert the evidence is legally and factually insufficient to prove that Boyer timely performed under the Subcontract. Neither in the trial court nor on appeal, have the Bencon Parties asserted that time is of the essence as a matter of law under the Subcontract; rather, they assert the evidence is legally and factually insufficient to prove that Boyer timely performed under the Subcontract. The jury charge did not require the jury to find that Boyer had timely performed the Subcontract to find Bencon liable under the Subcontract. Because some essential elements of Boyer's breach-of-contract claim were submitted to and found by the jury and because, without request or objection, the jury charge did not require a finding as to the element of timely performance by Boyer, the trial court is deemed to have made a such a finding in support of the judgment if there is factually sufficient evidence to support such a finding. *See* TEX.R. CIV. P. 279; *Ramos v. Frito–Lay, Inc.*, 784 S.W.2d 667, 668–69 (Tex.1990); *Jamar v. Patterson*, 910 S.W.2d 118, 120–23 (Tex.App.-Houston

---

**3.** We also note that, even if the Bencon Parties' supplemental answer had sufficiently pleaded failure to comply with the alleged conditions precedent listed in that pleading, the result would not be different. In this event, we would have considered only the alleged conditions precedent that are both listed in the supplemental answer and asserted by the Bencon Parties on appeal. All of these alleged conditions precedent are based on article 8 of the Prime Contract, entitled "Invoicing and Payment." The unambiguous language of this article deals with how Bencon should invoice Metro and how and when Metro should pay Bencon. The unambiguous language of this article does not contain project plans, specifications, or contract conditions that apply to the work Boyer agreed to perform under the Subcontract. *See Seale*, 321 S.W.2d at 150–51; *LeBlanc*, 412 S.W.2d at 93; *Patrick J. Ruane, Inc.*, 8 Cal.Rptr. at 385. Therefore, the Subcontract does not incorporate these alleged conditions precedent. We do not address Boyer's assertion that satisfaction of any alleged conditions precedent is excused on the stated grounds that it would result in an inequitable forfeiture or penalty. *See TA Operating Corp. v. Solar Applications Eng'g, Inc.*, No. 04–04–00180–CV, 2005 WL 712010, at *3 (Tex.App.-San Antonio March 30, 2005, no pet. h.); *Lesikar Const. Co. v. Acoustex, Inc.*, 509 S.W.2d 877, 881–82 (Tex. Civ.App.-Fort Worth 1974, writ ref'd n.r.e.).

[14th Dist.] 1995, writ denied). The Bencon Parties assert that there is no evidence or, alternatively, factually insufficient evidence, to support such a finding. Similarly, the Bencon Parties assert that they proved liability on their counterclaim for delay as a matter of law or, alternatively, that the jury's finding against such liability is against the great weight and preponderance of the evidence.

Because the Bencon Parties did not object to the articulation of what Boyer must do to timely perform the Subcontract as set forth in the jury charge, we measure the sufficiency of the evidence in this regard using the charge's definition of timely performance. *See City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 71 (Tex.2000) (holding that appellate court must review sufficiency of evidence based on un-objected to definitions or instructions in the jury charge, whether or not they accurately state the law). The relevant parts of the jury charge state that Boyer had to complete the Subcontract "within a reasonable time." Therefore, we must determine whether there is legally and factually sufficient evidence to support a finding that Boyer completed the Subcontract within a reasonable time.

The Subcontract states that Boyer's work "will take approximately 160 working days to complete end to end, including manholes." The record contains evidence of the following:

- Five working days equals seven calendar days, so that 160 working days equals 224 calendar days.
- Bencon requested a 116–day extension from Metro based on delays in the tunneling work due to underground obstructions, stating that "[i]n assessing the delay encountered by our Subcontractor Boyer, Inc[.], we come to the conclusion that 116 working day extensions [sic] of time, and associated additional costs are warranted."
- In response to this request, Metro granted an extension of 84 calendar days.
- The sum of 224 calendar days and 84 calendar days is 308 calendar days.
- Metro gave Bencon notice to proceed with the work on the Project effective February 27, 1999.
- On March 4, 1999, Metro approved Boyer as a subcontractor on the Project.
- In March 1999, Boyer discovered that a live utility wire from Houston Lighting & Power Company ("HL&P") was in a utility duct at Congress and Louisiana, and discussed this conflict with Metro.
- Boyer could not proceed with the tunneling until HL&P relocated the live electrical wire so that it did not pass through the duct in question.
- The purpose of Bencon hiring Boyer as the tunneling subcontractor was to have Boyer deal with utilities conflicts because of Boyer's skill and experience in this regard.
- Despite Boyer's prompt notice to HL&P of this utility conflict, HL&P did not complete the relocation until May 19, 1999.
- HL&P's failure to complete relocation of its electrical wire until May 19, 1999, was not Boyer's fault.
- Boyer could not have started its tunneling work before May 20, 1999.
- Boyer broke ground and began tunneling on May 20, 1999, and did not stop working until its work was complete on March 24, 2000.
- From May 20, 1999 to March 24, 2000, is 309 calendar days.
- In July 1999, a representative of Bencon wrote a letter to a representative

of Metro regarding the Project. This letter states that "[a]ll activities remain on course and time."

- When Boyer finished its work on March 24, 2000, Bencon was five blocks behind Boyer performing aspects of the Prime Contract that Bencon performed itself.
- On March 29, 2000, Metro inspected and completely accepted Boyer's work.
- Boyer demobilized and removed its personnel from the site of the Project by March 31, 2000.
- The first time Bencon ever indicated to Boyer that it believed Boyer may have delayed the Project was in a letter from Bencon to Boyer dated March 21, 2000.
- Bencon substantially completed the entire Prime Contract on January 31, 2001.
- Because Metro granted Bencon a second 84–day extension, unrelated to Boyer's work, under these extensions, Bencon completed the Prime Contract on time, and Metro did not assess any delay damages against Bencon under the Prime Contract.
- Metro has paid Bencon for the part of Boyer's work that Bencon has not paid. Metro had no complaints about Boyer's work, which was very good.

Under the applicable standard of review, we conclude that the evidence is legally sufficient to support a fact finding that Boyer completed its obligations under the Subcontract in a reasonable time.

As to factual sufficiency, there is conflicting evidence on various issues. Further, Alex Baaklini, the President of Bencon, testified that, although Bencon did not tell Boyer to start work on February 3, 1999, the date of the Subcontract, and although Metro had not yet approved Boy-

er as a subcontractor, he expected Boyer to start working on February 3, 1999, which he considered the start date of Boyer's performance. Baaklini also testified that Bencon wanted to increase its profits by completing the Prime Contract six months ahead of schedule and that, based on this desired completion date, Bencon finished the Prime Contract four months late. Baaklini testified that Boyer's delay in starting and completing its work under the Subcontract caused a four-month delay. However, Baaklini admitted that he never gave Boyer a schedule for its work under the Subcontract and that he never told Boyer that Bencon wanted to complete the Prime Contract six months early. Though Baaklini did testify that Boyer did not timely perform the Subcontract, the jury is the sole judge of the credibility of the witnesses. *See Pascouet,* 61 S.W.3d at 615–16.

On this record, after considering and weighing all the evidence, we conclude the evidence that Boyer completed the Subcontract within a reasonable time is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Pool,* 715 S.W.2d at 635. Accordingly, we deem the trial court to have made a finding that Boyer completed the Subcontract within a reasonable time. *See* TEX.R. CIV. P. 279; *Ramos,* 784 S.W.2d at 668–69; *Jamar,* 910 S.W.2d at 120–23. We likewise reject the Bencon Parties' arguments that they conclusively proved as a matter of law that Boyer failed to complete the Subcontract within a reasonable time. We also conclude that the jury's finding of no liability for Boyer as to the delay counterclaim is not against the great weight and preponderance of the evidence.

Having rejected both the legal and factual sufficiency challenges regarding the timeliness of Boyer's performance under

the Subcontract, we overrule the Bencon Parties' third, fifth, and seventh issues.

**C. Is the evidence legally and factually sufficient to support the jury's findings as to reasonable and necessary attorney's fees?**

In their fourth issue, the Bencon Parties assert several challenges against the trial court's rendition of judgment on the jury's verdict as to attorney's fees. First, they assert Boyer cannot recover attorney's fees because it cannot recover on its contract claim for the same reasons asserted by the Bencon Parties in support of their first issue. This argument fails for the same reasons set forth in the foregoing discussion of the first issue.

■ The Bencon Parties also assert that Boyer had to segregate its proof as to the reasonableness of attorney's fees among its various claims as well as between fees incurred in connection with affirmative claims and its fees for defending the Bencon Parties' counterclaim. After an attorney's fees expert testified, among other things, that the "inextricably intertwined" exception to the segregation requirement applies to Boyer's proof of reasonable and necessary attorney's fees in this case, the trial court properly addressed this issue as a matter of law, ruling that the "inextricably intertwined" exception applies. *See Air Routing Intern. Corp. (Canada) v. Britannia Airways, Ltd.*, 150 S.W.3d 682, 687–88 (Tex. App.-Houston [14th Dist.] 2004, no pet.). However, when the trial court made this ruling, the Bencon Parties had not objected regarding the alleged necessity of segregating proof of attorney's fees. The following day, during trial and out of the hearing of the jury, the Bencon Parties'

counsel asserted to the trial court that "as a matter of law they have to segregate their attorney's fees ... I object to any fees going to the jury and I ask the [c]ourt to rule that the attorney's fees must be segregated." The trial court took this objection under advisement but never ruled on it.

At the charge conference, the trial court's proposed charge did not segregate the attorney's fees as to Boyer's various claims or as between its claims and its defense of the counterclaim. The trial court asked counsel for the Bencon Parties what objections the Bencon Parties had to the charge. Their counsel responded by asserting several objections, none of which involved segregation of attorney's fees, and then stated, "That's it, Judge. Those are my objections to the Charge." Even if we presume for the sake of argument that the trial court, in submitting the jury charge without segregation of attorney's fees, might have implicitly overruled the segregation objection lodged the day before, on this record, we conclude that the Bencon Parties waived error by representing to the trial court that they had listed all of their charge objections and by not including a segregation objection in this list. Because the Bencon Parties did not object to the lack of segregation of attorney's fees in the charge, the Bencon Parties waived their complaint. *See Green Intern., Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex.1997) (holding that parties waived error regarding failure to segregate attorney's fees because they did not object when the court's charge failed to segregate). Therefore, we reject the Bencon Parties' challenge based on failure to segregate attorney's fees.[4]

---

4. We note that, even if the Bencon Parties had not waived error in this regard, we still would conclude under our de novo review that the "inextricably intertwined" exception

is satisfied. *See Air Routing Intern. Corp. (Canada)*, 150 S.W.3d at 687–98 (discussing de novo standard of review and concluding

■ The Bencon Parties' main argument is that the evidence is legally and factually insufficient to support the jury's finding that $282,773.33 is a reasonable and necessary fee for services rendered by Boyer's attorneys at the trial-court level. In this regard, they first assert that the evidence is legally and factually insufficient to support an award based on the work of legal assistants. Boyer's attorney's fees expert was its lead attorney, and she discussed both the services of the legal assistants whose work formed part of the basis for the requested attorney's fees award, and also her supervision of the legal assistants. She also testified that the hourly rates charged for work performed by the legal assistants in this case are reasonable and lower than the rates many law firms charge. The billing records submitted in evidence show the nature of the legal work the legal assistants performed, the hourly rate being charged for their services, and the number of hours worked by the legal assistants. Applying the relevant standards of review, we conclude that the evidence is legally and factually sufficient to support the jury's finding as to reasonable and necessary attorney's fees to the extent it was based on work performed for Boyer by legal assistants. *See Moody v. EMC Servs., Inc.*, 828 S.W.2d 237, 248 (Tex.App.-Houston [14th Dist.] 1992, writ denied) (listing factors to be considered in reviewing sufficiency of award to extent it is challenged based on ability to recover attorney's fees regarding services of legal assistants); *Stewart Title Guar. Co. v. Aiello*, 911 S.W.2d 463, 474–75 (Tex.App.-El Paso 1995) (holding evidence was legally and factually sufficient to support award of reasonable attorney's fees based in part on work of legal assistants), *rev'd in part on other grounds*, 941 S.W.2d 68 (Tex.1997).

■ The Bencon Parties also assert that the award of over $282,000 in attorney's fees for work in the trial court is excessive because Boyer recovered only $81,336.83 in actual damages. Boyer originally sued for more than $200,000, although Bencon paid $126,686,80 shortly after Boyer filed suit. Furthermore, Bencon asserted a counterclaim against Boyer seeking more than $530,000 in damages. Boyer's attorney's fees expert testified as follows:

- Bencon's counterclaim seeking more than $530,000 was a very serious claim, and $530,000 was a huge amount of money for Boyer.

- Boyer's attorneys sent out various statutory notices to perfect Boyer's payment-bond claim.

- Boyer was surprised that Bencon asserted a counterclaim based on delay, and Boyer was uncertain as to the basis of this claim.

- Although Boyer never had to obtain an order compelling discovery, Bencon initially produced only one box of documents, and Boyer's counsel had to make additional requests to Bencon's counsel to obtain production of more documents, thus generating more attorney's fees.

- Because Bencon produced so few documents, Boyer had to propound significant requests and analyze large numbers of documents from Metro and HL&P to try to piece together evidence regarding the whole Project and Boyer's place in it.

- Boyer's counsel also had to prepare for and take depositions of three Bencon personnel, as well as prepare for and defend the depositions of three Boyer personnel.

that legal standard for "inextricably intertwined" exception was satisfied).

- Invoices and fees summaries admitted in evidence show $252,773.33 in billed fees up to a week before counsel's testimony. In the last week, at least $30,000 more in fees had been generated for a total of $282,773.33.

- There were a couple of prior trial settings in the case in which Boyer's counsel did not know that the trial court was not going to reach this case until the last few days before the trial setting. This preparation for and delay of trial further increased the attorney's fees.

- Boyer also hired an expert in this case, although the expert's fees are not included in Boyer's attorney's fee request.

Boyer's counsel testified as to the factors used to determine reasonableness of attorney's fees, the hourly rates of the billers, and the reasonableness of these hourly rates. Mark Boyer also testified that the nature of Bencon's delay claim was difficult to pin down, and Bencon's legal theory changed frequently. Boyer testified that a judgment in Bencon's favor for half a million dollars could have put Boyer out of business.

Controverting much of the testimony of Boyer's attorney's fee expert, counsel for the Bencon Parties testified as follows:

- A reasonable and necessary fee in this case would be $250 per hour for lawyers of twenty-two years' experience.

- Counsel for the Bencon Parties will have billed 200 hours for work in the trial court in this case; therefore, a reasonable and necessary fee for this work would be $50,000.

- Counsel for the Bencon Parties does not charge the client for time worked by an associate or by legal assistants, and counsel has a flat-fee arrange-

ment capping his compensation at $20,000, plus any additional amount Bencon may wish to pay, in its discretion, to counsel at the end of the case.

Under the applicable standards of review, we conclude the evidence is both legally and factually sufficient to support the jury's findings as to reasonable and necessary attorney's fees in the trial court. *See Murrco Agency, Inc. v. Ryan*, 800 S.W.2d 600, 606–07 (Tex.App.-Dallas 1990, no writ) (rejecting excessiveness challenge to attorney's fees more than three times the actual damages recovered based on testimony of the attorney's fees expert as to the time spent, skill required, and nature of the case, which included defense of counterclaims for hundreds of thousands of dollars). Accordingly, we overrule the Bencon Parties' fourth issue.

**D. Did the trial court err in denying the Bencon Parties' motion for mistrial?**

In their sixth issue, the Bencon Parties assert the trial court erred in denying their motion for mistrial based on Boyer's alleged intentional violation of the trial court's in limine rulings. Although the Bencon Parties attach the alleged in limine ruling on which they base this issue in the appendix to their appellate brief, this alleged ruling is not in our appellate record. With limited exceptions not relevant here, an appellate court may not consider matters outside the appellate record. *Nguyen v. Intertex, Inc.*, 93 S.W.3d 288, 293 (Tex.App.-Houston [14th Dist.] 2002, no pet.). The attachment of documents as exhibits or appendices to briefs is not formal inclusion in the record on appeal and, therefore, the documents cannot be considered. *See id.* Because the alleged in limine ruling on which the Bencon Parties

base their sixth issue is not in our record, we cannot consider it.[5]

 In any event, the Bencon Parties' trial counsel did not object to the testimony in question—that the Bencon Parties' trial counsel represents Bencon or its employees or officers in a criminal matter. Furthermore, the Bencon Parties' counsel, acting as an expert witness as to attorney's fees, was himself the source of the alleged incurably prejudicial testimony. After the Bencon Parties' counsel made the statements, the trial court instructed the jury that Bencon, its officers, and its owners have never been convicted of a crime. The trial court's instruction to disregard cured any prejudice to the Bencon Parties from the testimony of their trial counsel. *See Weidner v. Sanchez*, 14 S.W.3d 353, 363–65 (Tex.App.-Houston [14th Dist.] 2000, no pet.). Accordingly, we conclude the trial court did not abuse its discretion in denying the Bencon Parties' motion for mistrial, and we overrule their sixth issue.

## IV. CONCLUSION

Boyer did not have to prove compliance with the alleged conditions precedent raised by the Bencon Parties because the Bencon Parties did not assert a specific denial as to these conditions. The only denial that refers to any of these alleged conditions does not take effect unless the entire Prime Contract applies to Boyer, and it does not. The evidence is legally and factually sufficient to support a deemed finding that Boyer performed under the Subcontract within a reasonable time. The evidence is also legally and factually sufficient to support the jury's findings as to reasonable and necessary

attorney's fees. The trial court did not abuse its discretion in denying the Bencon Parties' motion for mistrial.

We affirm the trial court's judgment.

---

5. Even if the document in question were in our record, it would not support the Bencon Parties' position because this document does not contain an in limine ruling of the trial court; rather, it contains an agreement by Boyer to approach the bench before mentioning any criminal convictions of Eddie Baaklini. The complained-of cross-examination of the Bencon Parties' trial counsel did not mention any conviction of Eddie Baaklini, so there is no apparent violation of the purported in limine agreement.