In The



Court of Appeals


 

Ninth District of Texas at Beaumont



____________________



NO. 09-05-390 CR


____________________



THE STATE OF TEXAS, Appellant



V.



RODNEY EUGENE STARCHER, Appellee






On Appeal from the 284th District Court


Montgomery County, Texas


Trial Cause No. 96-02-00139-CR






MEMORANDUM OPINION


 This is an appeal by the State from the trial court's order granting appellee, Rodney
Eugene Starcher's, motion for forensic DNA testing pursuant to Chapter 64 of the Texas
Code of Criminal Procedure. See Tex. Code Crim. Proc. Ann. arts. 64.01 - 64.05 (Vernon
Supp. 2005). The trial court's order contains no specific findings, but merely states that the
trial court "reviewed [Starcher's] pleadings as well as Counsel's argument . . . ." We have
no reporter's record of any evidentiary hearing before us and the parties do not mention a
hearing in their appellate briefs. As nothing in Chapter 64 requires the trial court to conduct
a hearing concerning the determination of whether a defendant is entitled to DNA testing,
we proceed to a decision based upon the contents of the clerk's record and the law. See
Whitaker v. State, 160 S.W.3d 5, 8 (Tex. Crim. App. 2004), cert. denied, 543 U.S. 864, 125
S.Ct. 194, 160 L.Ed.2d 106 (2004); Rivera v. State, 89 S.W.3d 55, 58-59 (Tex. Crim. App.
2002). (1) The State raises one issue: "The trial court erred in granting appellee's motion for
forensic DNA testing because appellee failed to satisfy the preconditions of Chapter 64 of
the Texas Code of Criminal Procedure." 

 We review the trial court's decision by employing the bifurcated standard of review
set out in Guzman v. State, 955 S.W.2d 85 (Tex. Crim. App. 1997). In this standard of
review, "we afford almost total deference to a trial court's determination of issues of
historical fact and application-of-law-to-fact issues that turn on credibility and demeanor,
while we review de novo other application-of-law-to-fact issues." Rivera, 89 S.W.3d at 59
(citing Guzman, 955 S.W.2d at 89). Under this standard, the ultimate question is whether the
defendant has established, "by a preponderance of the evidence," that he "'would not have
been convicted if exculpatory results had been obtained through DNA testing.'" Wilson v.
State, No. AP-75062, 2006 WL 475431, at *3 (Tex. Crim. App. March 1, 2006) (quoting 
Tex. Code Crim. Proc. Ann. art. 64.03(a)(2)(A) (Vernon Supp. 2005)). We find that
appellant has completely failed to carry this burden based upon the record before us.

 Starcher's motion for DNA testing was accompanied by his affidavit which reads, in
pertinent part, as follows: 

 I was previously accused of the murder of Thanh Van Bui. I plead not
guilty to that offense because I did not murder Thanh Van Bui. I continue to
assert that I am innocent of the charges that were made against me in this case. 
I have read the Motion for Post Conviction Forensic DNA Testing and, to the
best of my knowledge, all the allegations made in the motion are true and
correct. 


 The portions of Starcher's motion addressing the evidence elicited at his prior trial 


consists of the following: 


 Defendant's case centered around the State's claim that he allegedly
murdered Thanh Van Bui alongside the roadway while the victim was still seat
belted behind the steering wheel of his car. There were no eye witnesses to
this murder. No fingerprints were found inside or outside the victim's car. 
Consequently, identification of the assailant was a key issue in the Movant's
case.


 State's witness Douglas Saul testified that Movant was excluded from the
forensic sample he was requested to test. (RR-Vol. IV, at page 45). The State
alleged to District Judge Fred Edwards that the Harris County Medical
Examiner, Dr. Vladimir Parungas [sic] had recovered human skin tissue from
beneath the victim's fingernails, and that in the doctor's opinion it, "is very
likely that the victim fought his killer and scratched the attacker on the arms
or face." See (State's Exhibit # 1, at page 5).


 Movant submits that this skin sample was not submitted to the Texas
Department of Public Safety for forensic DNA testing. This evidence is
contained within the list submitted on July 18, 1996, by Detective Noel
Stanley.


 . . . .


 The Movant was alleged to have used a knife to murder the victim
through the open door, of the victim's vehicle, which would have necessitated
close contact with the victim. Thereby allowing the victim to scratch the
assailant and remove skin tissue that the coroner claimed to have recovered
during the autopsy. (2) State's Exhibits 11 and 12 clearly show the only access
to the victim came through the open driver's door.


 The State's witness, Detective Kirk Ervin testified at RR-Vol. IV, at
pages 83-84 that Dr. Parungao told him that he had collected human skin tissue
from beneath the victim's fingernails. Detective Ervin further testified at RR-Vol. IV, at pages 74-75, that the scratches he observed on the Movant
approximately 2 ½ hours after the arrest were not consistent with fingernail
scratches. 


 The evidence adduced at trial shows that the victim was alleged to have
scratched his attacker, thereby leaving a skin sample behind. Justice requires
this skin tissue sample be tested for DNA due to the close proximity that the
attacker would have had to maintain with the victim and the lack of fingernail
scratches on the Movant. This is exculpatory evidence which would have
raised reasonable doubt to the jury during the course of the Movant's trial.


 Justice requires that testing be performed on this skin tissue sample to
determine if Movant could be excluded as the attacker. Such evidence, had it
been available during the trial of the offense, would have made it reasonably
probable that Movant would not have been convicted. 


 On direct appeal, this Court affirmed Starcher's murder conviction. See Starcher v.
State, No. 09-97-456-CR, 1999 WL 642243 at *5 (Tex. App.--Beaumont Aug. 11, 1999, pet.
ref'd) (not designated for publication). In his direct appeal, Starcher's only appellate issues
complained of the lack of legally and factually sufficient evidence to sustain his conviction. 
See id. at *1. In our review of the trial evidence, we noted the following:

 The most damaging testimony was that of Darrell Pyle, a friend of
Starcher's. Pyle testified that on Friday, November 24, he arrived home at 10
or 11 p.m. to find he had a message from Starcher on his answering machine. 
On the message Starcher said it was very important that he talk to Pyle. 
Starcher came to Pyle's house at 7 or 8 a.m on Saturday and they spent the day
together. During the day Starcher made various comments to Pyle regarding
the murder. Starcher confessed to Pyle that he "may be in a little trouble, more
trouble than what he could get out of." Later he told Pyle that he "was in some
pretty serious trouble" and that "he done something horrible." Pyle stated that
when he inquired further, Starcher told him "[t]hat he may have hurt somebody
very bad[,]" and that he had killed a "chink."


 Pyle additionally stated that during the day on Saturday, Starcher said
he needed to go back to his house to get "some pills." Starcher told Pyle he
had stolen drugs from the victim and that he committed the murder "[t]o get
money to support his family." 


 In his statement, read by Pyle at trial, Pyle stated, "[Starcher] told me
that after he'd killed the guy, he had to run through the woods, and he got all
cut up and scratched up on his arms." Starcher told Pyle he ran to his mother's
house, and his mother burned his clothes. Detective Ervin testified that the
murder scene is approximately one to one and a half miles from Starcher's
parents' house. In addition, Vicki Starcher [Starcher's wife] testified that
when Starcher arrived home on Friday night, his mother was with him. 


Id. at *4. 


 Considering the above-quoted facts from Starcher's murder trial, even if the victim's
fingernail scrapings were retested, and the results were consistent with Starcher's theory (that
the tests would definitively exclude him and/or show DNA from someone other than Starcher
or the victim), Starcher could not meet his burden of establishing, by a preponderance of the
evidence, that he would not have been convicted of the murder of Mr. Bui. More
specifically, the record before us is silent as to any explanation for all of the incriminating
statements Starcher made to Mr. Pyle. The record is also silent as to any explanation for
Starcher's very recent, post-murder possession of the distinctive medication, "blue Roche
Valium," that was known to have been used by the victim for pain from a foot injury. See
id. Starcher simply fails to show how the mountain of incriminating circumstantial evidence
we set out in our opinion on direct appeal could be seriously called into question if the latest
DNA testing of the skin samples preserved from beneath the victim's fingernails by Dr.
Parungao were to produce exculpatory results. We do not question Starcher's assertion that
identity was a fact issue at trial as there were no witnesses to the killing, and nothing was
found at the scene of the crime patently incriminating Starcher as the assailant. Nevertheless,
even if newer, more discriminating DNA testing were to show that another individual's skin
was contained in Mr. Bui's fingernail scrapings, that finding would not negate Starcher's
highly incriminating statements to Mr. Pyle, nor explain Starcher's recent post-murder
possession of property belonging to Mr. Bui. 

 As the record before the trial court, and before us, was entirely devoid of any evidence
to indicate that Starcher would not have been convicted if exculpatory results had been
obtained through even the latest DNA testing, the trial court abused its discretion in granting
Starcher's motion. In light of the trial evidence which indicated that Starcher admitted
committing the murder as well as other highly incriminating circumstances presented to the
jury from a variety of witnesses, the trial court simply could not have found Starcher had met
his burden by a preponderance of the evidence. See Tex. Code Crim. Proc. Ann. art.
64.03(a)(2)(A). The State's appellate issue is sustained. We reverse the trial court's order
granting Starcher's motion for forensic DNA testing pursuant to Chapter 64 of the Code of
Criminal Procedure. Said order is vacated, and the cause is dismissed.

 REVERSED AND RENDERED.

 

 __________________________________

 CHARLES KREGER

 Justice


Submitted on April 4, 2006

Opinion Delivered May 3, 2006

Do not publish


Before McKeithen, C.J., Kreger and Horton, JJ.

CONCURRING OPINION



 This court's opinion reverses the trial court's decision to grant Starcher's motion for
post-conviction DNA testing because Starcher failed to carry his burden of proof on his post-conviction DNA motion. I concur. However, in my opinion, Starcher specifically failed to
discharge his burden under article 64.03 to show that newer DNA testing techniques
presently available would provide a reasonable likelihood of results more accurate and
probative than the results of the previous tests. Further, he failed to accompany his motion
with an affidavit "containing statements of fact in support of the motion" to show he would
not have been convicted if the DNA testing methods had produced results showing that
another's DNA were to be found in the DNA evidence currently in the State's possession.
See Tex. Code Crim. Proc. Ann. art. 64.01(a) (Vernon Supp. 2005); Tex. Code Crim.
Proc. Ann. art. 64.03(a)(1) and (2) (Vernon Supp. 2005); Dinkins v. State, 84 S.W.3d 639,
642 (Tex. Crim. App. 2002). Because his motion was insufficient, Starcher has not complied
with his burden of proof as required by article 64.03. 

 On the record presently before us, and for the reasons explained below, I disagree that
the majority properly may utilize evidence not in the record before us, and weigh it against
evidence that is before us, to reach the conclusion that Starcher failed to meet his burden of
proof. My disagreement with the majority's stated basis for Starcher's failure to carry his
burden of proof centers on the record before us, and what should be considered as the
evidence in the record before the trial court. 

 Starcher initiated the present appeal when he filed a post-conviction "Motion For
Forensic DNA Testing." Starcher's attorney verified the motion, and the attorney's
verification states, "I have read the foregoing Motion for Forensic DNA Testing and every
statement is within personal knowledge from the record of the trial and is true and correct,
according to the trial record." Starcher's motion is divided into sections titled "Case
History," "Facts Pertinent To Motion For Forensic Testing," "Argument," "Standard For
Testing," and "Standard Of Review: Motion For New Trial." Also attached to Starcher's
motion is his affidavit, which the majority opinion quotes in full. 

 In addition to Starcher's motion, the clerk's record contains: copies of the criminal
docket sheets; Starcher's indictment; the judgment and order of conviction; an order directing
the State to file a response to Starcher's motion with an affidavit as to the location and
condition of any evidence available for testing; and, the State's Response In Opposition To
Defendant's Motion For Forensic DNA Testing. Attached to the State's Motion is the
affidavit of April Knudsen, who states that the Department of Public Safety confirmed it
retained in the crime lab "blood samples from Mr. Starcher and Mr. Bui [the decedent], the
fingernail scrapings, and a sample from the knife." Knudsen's affidavit does not address
whether the material she identified as being in the State's possession "has been subjected to
a chain of custody sufficient to establish that it has not been substituted, tampered with,
replaced, or altered in any material respect." Tex. Code Crim. Proc. Ann. art.
64.03(a)(1)(A)(ii) (Vernon Supp. 2005). Also attached to the State's Response is an unsworn
document titled "Statement of Facts," that is apparently a copy of the Statement of Facts filed
by the State in response to Starcher's prior appeal of his murder conviction. Finally, the
record contains a copy of an order in which the trial court grants Starcher's motion for
forensic DNA testing. 

 Of great significance, at least in my view, is that the record before us does not include
the reporter's record of Starcher's criminal trial. Although both Starcher's motion and the
State's response provide record references to the evidence at Starcher's murder trial, the
portions of the reporter's record to which they refer are not attached as exhibits to these
documents. Also, there is no indication in the record that any party requested the trial court
to take judicial notice of all or any portion of the evidence introduced in Starcher's trial. 

 The order entered by the trial court granting the motion indicates that "Having
reviewed the Movant's pleadings as well as Counsel's argument, this court is of the opinion
that said motion should be: GRANTED." Thus, the record is ambiguous at best regarding
whether the trial court relied on none, portions, or all of the reporter's record of Starcher's
criminal trial. Based on the record before us, I am unwilling to speculate that the testimony
from the trial was before the trial court, or that the trial court took judicial notice of some,
or all, of the trial testimony and reviewed it in reaching its conclusion that Starcher met his
burden of proof. My reluctance stems in part from the evidentiary requirements that
accompany a court's decision to take judicial notice of adjudicative facts, as required by
Texas Evidence Rule 201. Additionally, my reluctance stems from the fact that, in my
opinion, a judge who presided at the criminal trial who is reviewing the testimony of a
witness in a prior criminal trial may of necessity make a credibility determination regarding
the witness's testimony. The decision by a trial court that presided in the original trial to
disregard a witness's testimony in deciding a post-conviction DNA motion might in some
cases influence the outcome of the trial court's decision to grant, or deny, a post-conviction
DNA motion. On the record before us, because we cannot discern the testimony that the trial
court may have relied on, or disregarded, we cannot review the trial judge's credibility
determinations in order to determine if the court's decision is appropriate or involved the
application of law to fact that turned on credibility. 

 In contrast, the majority's approach appears to weigh, de novo, the "evidence" as
recited in the court's prior opinion against Starcher's evidence of his innocence, and then
concludes that "Starcher could not meet his burden of establishing, by a preponderance of
the evidence, that he would not have been convicted of the murder of Mr. Bui." The majority
states that "Starcher simply fails to show how the mountain of incriminating circumstantial
evidence we set out in our opinion on direct appeal could be seriously called into question
if the latest DNA testing of the skin samples preserved from beneath the victim's fingernails
by Dr. Parungao were to produce exculpatory results." The majority then concludes that
even if more discriminating DNA testing proved that the skin under the murder victim's
fingernails were that of someone other than Starcher, that fact would not negate Starcher's
highly incriminating statements to Mr. Pyle, nor explain Starcher's post-murder possession
of property belonging to the murder victim. 

 Although our review of some aspects of the trial court's decision below are de novo,
it is not clear to me that a trial judge in a post-conviction DNA hearing is prohibited from
making credibility determinations regarding witnesses who testified at the trial in its
application of the preponderance of evidence standard of article 64.03. In some instances,
we may be able to weigh the evidence as effectively as the trial judge. However, without the
entire trial record before us, we cannot be as effective as the trial judge when he is the same
one who presided over the trial and later heard the post-conviction motion for DNA testing. 

 If I could discern whether the trial judge appropriately discounted some of the
testimony from witnesses who incriminated Starcher, it is possible that I might understand
the trial court's basis for its decision to grant Starcher's motion. Generally, in deciding a
motion for new trial the trial judge is allowed broad discretion to weigh the credibility of
witnesses and the evidence in determining whether a different result would occur upon
retrial. Godoy v. State, 122 S.W.3d 315, 319 (Tex. App. - Houston [1st Dist.] 2003, pet.
refused). Generally, when the losing party on a motion for new trial fails to request findings
of fact, we will not reverse the trial court if the trial court's ruling could be reasonably based
on adverse findings of fact. Charles v. State, 146 S.W.3d 204, 211 (Tex. Crim. App. 2004). 
If this is the standard that is to be applied, and I think that it is; and, if the majority assumes
that the trial court reviewed the entire trial transcript, and I think that they do; then, because 
the trial court granted the post-conviction DNA motion, we are forced to presume that the
trial court disregarded the credibility of the witnesses who provided circumstantial evidence
of Starcher's guilt. I believe that when the post-conviction DNA judge also served as the
trial judge, he may make credibility decisions to which we should defer. As a result, I cannot
join in the majority's analysis of how it reached its conclusion.

 From the majority's description of the evidence, it appears that this case involves an
unwitnessed murder. There was no direct physical evidence that tied Starcher to the murder. 
If the fingernail scrapings were tested and demonstrate that another person's DNA is under
the murder victim's fingernails, it seems that a plausible argument could be made that the
evidence preponderates in favor of Starcher's alleged innocence if the circumstantial
evidence witnesses are not to be believed. However, as the trial record is not before me, I
cannot weigh it, and I am certainly not in as good a position to weigh it as the trial court may
have been. Because I disagree that the testimony regarding Starcher's guilt is properly before
the trial court, and with the majority's re-weighing evidence not properly before us, I concur
in the result only. 


 ___________________________

 HOLLIS HORTON

 Justice 


Concurrence Delivered May 3, 2006

Do Not Publish
1. "With limited exceptions not relevant here, an appellate court may not consider matters
outside the appellate record. Nguyen v. Intertex, Inc., 93 S.W.3d 288, 293 (Tex. App.--Houston
[14th Dist.] 2002, no pet.). The attachment of documents as exhibits or appendices to briefs is
not formal inclusion in the record on appeal and, therefore, the documents cannot be considered. 
See id." Bencon Mgmt. & Gen. Contracting, Inc. v. Boyer, Inc., 178 S.W.3d 198, 210 (Tex.
App.--Houston [14th Dist.] 2005, no pet.).
2. [sic et passim]