**Affirmed and Majority and Concurring Opinions filed April 30, 2015.**



In The

# Fourteenth Court of Appeals

## NO. 14-14-00058-CV

**WILLIAM WADE BARTLETT, Appellant**

**V.**

**LORI LEE BARTLETT, Appellee**

**On Appeal from the 309th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2012-55541**

# C O N C U R R I N G   O P I N I O N

This is a case of mistaken identity. A condition precedent is mistaken for a covenant. Due to the mischaracterization, the parties and the court apply the wrong analysis to the interpretation and enforcement of the contractual provision at the center of this appeal. Even so, the proper disposition is to affirm. Though I respectfully disagree with the majority's analysis, I concur in the court's judgment.

### *A Conditional Obligation to Pay College Expenses*

Former spouses Lori and William are parties to a contract that requires William to pay for expenses incurred to send their son to college if William approves the college, provided that the son is a full-time student, and the son maintains a grade-point average of at least a "C" toward the completion of his bachelor's degree.[1] This provision contains three conditions precedent that must be satisfied to trigger William's obligation to pay:

(1) William must approve the college;

(2) The son must be a full-time student; and

(3) The son must maintain a "C" average;

The only condition at issue in this appeal is the requirement that the son maintain a "C" average.[2] It is undisputed that the son's grade-point average fell below a "C" during the spring semester of his freshman year.

---

[1] The contract provision at issue reads:

> . . . WILLIAM WADE BARTLETT shall pay 100% of the reasonable education expenses incurred to send each child either to college or to technical, vocational, or business school of his approval, provided the child is a full-time student and maintains at least a "C" or the equivalent grade-point average toward the completion of either a college bachelor's degree or a technical, vocational, or business school diploma. The obligation includes tuition, activities fees, laboratory fees, books, room and board, health insurance and related uninsured health-care expenses, college dues and expenses, and other charges normally related to such education.

[2] William specifically denied that he approved the college. Although William argued in the trial court that he did not approve the son's college selection, he does not raise this issue on appeal. *See Pat Baker Co. v. Wilson*, 971 S.W.2d 447, 450 (Tex. 1998) (per curiam); *Izaguirre v. Rivera*, No. 14-12-00081-CV, 2012 WL 2814131, at *2 (Tex. App.—Houston [14th Dist.] (Jul. 10, 2012, no. pet.) (holding that appellate courts cannot reverse civil cases on unassigned error) (mem. op.). Nor does William challenge the son's status as a full-time student.

The parties characterize the son's failure to maintain a "C" average as a breach of contract, and the majority considers the son's failure to meet this requirement under a breach-of-contract analysis. Neither the characterization nor the approach is correct. We are not faced with a breach of contract but with a failure of a condition precedent. The difference is significant because it determines which legal analysis applies.

### *An Unsatisfied Condition Precedent, Not a Breach of Contract*

Contractual obligations may be absolute or conditional.[3] When a party is accused of failing to perform under a contract, he may respond that he has not breached the contract because any performance he was to render was conditional, *i.e.,* any duty he may have to perform has not yet arisen because some event has not yet occurred.[4] The son's achieving a "C" average was an event not certain to occur that affected William's duty to perform. The parties intended this event to occur before Lori or the son had a right to William's performance. The parties' use of the term "provided" in their contract is unmistakable language of condition showing that satisfaction of the "C"-average requirement is a condition precedent to William's performance.[5] Under this contractual language of condition, if the event does not occur, William's performance is not owed.[6]

---

[3] *See Solar Applications Engineering, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 108 (Tex. 2010).

[4] *See id.*

[5] *See id.* at 109 (noting that the terms "if," "provided that," "on condition that," or similar language is used to make performance conditional); *Hirschfield Steel Co., Inc. v. Kellogg Brown & Root, Inc.*, 201 S.W.3d 272, 281 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (same).

[6] *See id.*; *M7 Capital LLC v. Miller*, 312 S.W.3d 214, 220 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (holding that a successful breach-of-contract claim requires proof of a (1) valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of contract by the defendant, and (4) damages sustained by the plaintiff).

Under the law governing conditions precedent, the condition that the son maintain a "C" average is a strict requirement that precedes William's obligation.[7] The ordinary meaning of the word "maintain" is "to prevent a decline, lapse or cessation from [an] existing state or condition."[8] In the context of William's conditional obligation to pay the son's college expenses, the use of the term means that the son must continue to have a "C" average throughout his time in college, without any decline, interruption, or lapse in the requisite grade-point average.

The contract does not specifically state when William is obligated to perform. Instead, it requires William to pay expenses "incurred." The condition precedent to William's obligation to pay an expense incurred is the son's maintenance of (at least) "C-average" status. Thus, if an expense is incurred and the son has continually maintained at least a "C" average, then William is obligated to pay. Conversely, if an expense is incurred, and the son has not continually maintained at least a "C" average, then William is not obligated to pay.

The contract does not contain an express provision identifying the point in time at which "C-average" status is determined, but the contract impliedly provides that the status is to be determined at the same time grades are issued and fees and other expenses are charged. If the academic institution the son attended were on a quarter system, then it would be reasonable to determine the son's status *vis-à-vis* eligibility under the contract and the expenses (if any) owed on a quarter-system basis. Because the son attends an institution where grade-point averages are determined and expenses are "incurred" on a semester basis,[9] it is reasonable to

---

[7] *See PAJ, Inc. v. Hanover Ins. Co.*, 243 S.W.3d 630, 639 (Tex. 2008).

[8] *Black's Law Dictionary* 953 (6th ed. 1990). *See also Owasso Indep. School Dist. No. I-011 v. Falvo*, 534 U.S. 426, 433, 122 S. Ct. 934, 939, 151 L.Ed.2d 896 (2002) (defining "maintain" as "to keep in existence or continuance; preserve; retain").

[9] *See Black v. American Bankers Ins. Co.*, 478 S.W.2d 434, 437–38 (Tex. 1972) (holding

4

interpret the contract as containing an implied provision that the son must have maintained the required "C average" status each semester to trigger William's obligation.[10]

When expenses were incurred for the son's first semester of college, the son had no grade-point average and therefore had not dropped below a "C." Thus, at that time, when William's performance was due, the "C"-average condition precedent was satisfied and William was obligated to pay expenses incurred for the son's first semester. When the initial expenses were incurred for the second semester of college (payments for textbooks, parking, and tuition made in advance for the spring semester), the son had maintained a grade-point average of at least a "C" and therefore the condition precedent was satisfied at that time. During the second semester, however, the son's grade-point average dropped below a "C."[11] Therefore, the "C"-average condition precedent was not satisfied for the following semester or for any semester thereafter. When expenses were incurred for the son's summer school, William was not obligated to pay them because the condition

---

that medical expenses were incurred by party once party became liable for the expenses).

[10] *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 850 (Tex. 2009) (noting that contract terms are implied when they are "necessarily involved in the contractual relationship, such that the parties must have intended them and must have failed to express them"). Alternatively, the only reasonable interpretation is that the son is required to have a "C" average each semester to trigger William's obligation. *See Milner v. Milner*, 361 S.W.3d 615, 619 (Tex. 2012) (holding that agreement is unambiguous if there is only one reasonable interpretation). The trial court found that the son maintained a "C" grade-point average his freshman year, but the trial court did not find that the son fully performed the contract his freshman year. To the extent the trial court and the majority do not analyze the contract on a semester-by-semester basis, their interpretation of the contract is unreasonable.

[11] The contract does not specify whether the son is required to maintain a cumulative grade-point-average of a "C" or a "C" average each semester of college. We need not determine whether the contract requires that the son maintain a cumulative grade-point average of a "C" or achieve a "C" average each semester because in the spring semester of the son's freshman year he did not achieve a "C" average and his cumulative grade-point average fell below a "C."

5

requiring William's performance was not met. The son's failure to meet the "C"-average requirement vitiated William's conditional obligations under the contract.[12]

### *No Continuing Obligation to Pay After Failure to Maintain a "C" Average*

The majority is incorrect to the extent it suggests that William has any continuing obligation to pay for the son's college expenses under the contract. William agreed to pay the college expenses providing the son met the specified academic standard ("C" average) until the completion of his degree. The contractual language provides that the grade-point average was to be "maintained," meaning met on an uninterrupted basis. This particular word choice reflects the parties' intent that William's obligation be conditioned on the son's steady, continuing, and unbroken fulfillment of this minimum academic requirement. Because "maintain" connotes a lack of interruption, it is not reasonable to construe this provision to mean that the son could come into and out of compliance with the condition, getting college expenses paid when he had a "C' average and not getting them paid when he had below a "C" average. "Maintain" means no lapses.

The parties chose contractual language that would make William's funding obligation operate much like an academic scholarship; it does not obligate William to finance an on-again, off-again academic experience, paying the son's college expenses on "C"-average-and-above semesters and not paying them otherwise. One who turns in a "C" performance one semester and fails classes the next unnecessarily increases the expense of a college education and the time necessary to complete the degree plan. Thus, by contracting for maintenance of a "C"

---

[12] *See PAJ, Inc.*, 243 S.W.3d at 639.

average, the parties hedged the risk that the son might convert what is supposed to be a four-year experience into a longer and costlier one. It is clear from their choice of contractual language that the parties intended the son to continually keep at least a "C" average or face the loss of funding. By conditioning payment of the son's college expenses on the son maintaining a minimally acceptable level of academic performance, the parties sought to incentivize the son to stay on track for timely completion of his degree. Nothing in the contract suggests the parties intended for William to underwrite the son's college expenses indefinitely.

### *Material Failure of the Condition Precedent and Inapplicability of the Material-Breach Doctrine*

In analyzing the son's failure to maintain a "C" average as a breach of contract, the majority incorrectly suggests that the trial court reasonably could have found that any breach of the "C"-average requirement was immaterial. Even presuming for the sake of argument that a breach-of-contract analysis would be appropriate in this context, the failure to meet the grade requirement was material. The "C" average requirement is the *sine qua non* of the agreement. The son's failure to satisfy this essential term went to the heart of the parties' bargain. It was a material failure. Indeed, because a condition goes to the root of the contract, the failure of a condition is necessarily material.

A "D" is not a "C." Saying the difference between a "D" and a "C" is immaterial is like saying that almost scoring a touchdown is the same as scoring a touchdown or that "second place" is no different than "first place." Grade-point averages, by nature, are precise measurements that set lines of demarcation between one performance category and the next. The metric reflects an exact and unforgiving standard. Anything that falls short of meeting it is a material failure. As nearly any college student can attest, the difference between a letter grade and

the one just beneath it is often the difference in getting a scholarship, qualifying for membership in an honor society, or meeting eligibility requirements for athletics. In academia, the difference between one letter grade and another is material.

The lapse in the son's "C"-average status during the spring semester was not cured, as the majority suggests, by the son's registering for summer school and getting a grade that improved his grade-point average, just as the lapse could not be cured by the son's repeating his freshman-year courses, earning stellar marks the second time around, and adding an additional year of expenses to his college career. Because the son did not maintain a "C" average, the contractual condition that he do so was not satisfied and that is a material failure that cannot be undone or cured by application of the material-breach doctrine. [13]

In sum, William had an obligation to pay for the son's first semester of college, as the trial court ordered in its judgment, because at the time those expenses were incurred, the son had not established a grade-point average and thus had not dipped below a "C" average. Lori and the son admit, however, that the son's grade-point average then dropped below a "C". The son's failure to maintain a "C" average relieved William of any further obligations under this provision of the contract. [14]

---

[13] Just as the rules of football do not apply to a game of basketball, the standards of good-faith and fair dealing do not apply to the failure of conditions precedent. Likewise, neither a benefit-of-the-bargain analysis nor a "significant forfeiture" analysis are germane to a failed condition precedent. Even if these standards did apply, the son's behavior could hardly be said to satisfy them. The majority reasons that the son's grades dropped when his attendance suffered after his knee surgery because the injury prevented him from going to class. In spite of his injury, the son managed to achieve an "A" in both "Conditioning and Weight Training" and in "Country Western Dance I." He received an "F" in both "Introduction to Chemistry" and "Principles of Microeconomics." He received a "C" plus and two "C" minuses in his other courses. The son acknowledged that he was absent from class too often and did not timely discuss the situation with his professors.

[14] *See PAJ, Inc.*, 243 S.W.3d at 639.

Of course, it is William's parental prerogative to provide his son more than the law or the contract requires or to give his son second chances the contract does not demand. The record evidence shows William has done both. William's actions, properly viewed, are measures of grace rather than an assumption or fulfillment of obligations the contract does not impose.

### *A Game-Changer: Operation of Texas Rule of Civil Procedure 54*

This entire contractual analysis, however, is overshadowed by the operation of an important procedural rule that governs pleading and proof of conditions precedent. In her live petition in the trial court, Lori pled that all conditions precedent to her claim for relief had been performed or had occurred. Therefore, under Texas Rule of Civil Procedure 54, Lori was required to prove only the conditions precedent that William specifically denied.[15] William did not specifically deny that the son maintained a grade-point average of at least a "C."[16] Because William did not specifically deny the occurrence of this condition precedent, Lori did not have to prove at trial that the condition precedent was satisfied, had been performed, or had occurred.[17] And, because Lori was not required to prove that the "C" average condition precedent had been met, her failure to do so affords no grounds for relief. The trial court's judgment thus should be affirmed,[18] not because the material-breach analysis is correct but

---

[15] *See* Tex. R. Civ. P. 54; *Community Bank & Trust v. Fleck*, 107 S.W.3d 541, 542 (Tex. 2002) (per curiam).

[16] The only condition precedent William specifically denied was the condition that he approve the son's college.

[17] *See* Tex. R. Civ. P. 54; *Community Bank & Trust*, 107 S.W.3d at 542; *Bencon Management & General Contracting, Inc. v. Boyer, Inc.*, 178 S.W.3d 198, 203–05 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

[18] *See* Tex. R. Civ. P. 54; *Community Bank & Trust*, 107 S.W.3d at 542; *Bencon Management & General Contracting, Inc.* 178 S.W.3d at 203–05.

9

because, by operation of rule 54, Lori did not need to show satisfaction of the "C"-average condition.

### *Conclusion*

The outcome of this case should turn on the failure of the condition precedent rather than a breach-of-contract analysis. But, the parties and this court treat the condition as a covenant, so the appeal has a strange and ironic ending. The "C"-average condition precedent, though unmet in the evidence, did not have to be proved due to the operation of a procedural rule. Lori was thus relieved of the burden of proving the occurrence of a condition she otherwise could not prove. Though the trial court's contractual analysis is flawed, there is no basis to overturn the trial court's judgment.

/s/    Kem Thompson Frost
Chief Justice


Panel consists of Chief Justice Frost and Justices Boyce and McCally. (McCally, J., majority)

10