NO. 07-08-0065-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

DECEMBER 30, 2008

_____

ELIZABETH C. BRENT, APPELLANT

v.

MARTHA C. FIELD, J & J CATTLE FAMILY
LIMITED PARTNERSHIP, AMERICAN EXPRESS
TRAVEL RELATED SERVICES COMPANY, AND
THOMAS & WATSON TRUCKING, INC., APPELLEES

_____

FROM THE 69TH DISTRICT COURT OF HARTLEY COUNTY;

NO. 4300 H; HON. RONALD E. ENNS, PRESIDING

_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**OPINION**

Presenting eleven issues, Elizabeth C. Brent appeals from the trial court's judgment

in her breach of contract and declaratory judgment action against her sister Martha C.

Field, J & J Family Limited Partnership, Thomas & Watson Trucking, Inc., and American

Express Travel Related Services Company, Inc. Brent's claims arise from a contract by which she sold her interest in family business entities to Field.

We will reverse and render in part, vacate in part, and otherwise affirm the judgment. We will order a limited remand for calculation of prejudgment interest and for an award of reasonable attorney's fees.

Background

Brent and Field inherited the Houghton Ranch in Hartley County from their mother. In 1995, Brent and Field conveyed the property to J & J Cattle Family Limited Partnership, a limited partnership they created. Through the limited partnership and other entities Brent and Field carried on the ranching operation and other business.[1] Brent's husband R. P. Brent IV and Field's husband Steve Field also were active in the partnership's business.

In the midst of strained economic circumstances, in early 2003 Brent and Field reached an agreement through which Brent sold her interest in the partnership to Field. They memorialized their bargain in a contract of February 11, 2003.[2] Paragraphs 2 and 5 of the contract read:

---

[1] Brent and Field also did business through a corporation JJ Roundup, Inc., and a general partnership JJ Cattle Co. With their husbands, they owned Romero Creek Hunting Co., a general partnership. For convenience, we will refer to these entities and J & J Cattle Family Limited Partnership collectively as "the partnership."

[2] The contract is entitled Agreement for Sale of Limited Partnership Interest.

2

2. [Field] shall become a substituted general and limited partner of the Partnership in place of [Brent] as of the date of the transfer of the partnership interest, and [Field] shall also become the President and sole director of JJ ROUNDUP, INCORPORATED, a Texas corporation. [Field] agrees to protect and indemnify [Brent] and [Brent's husband] from liability from any and all obligations of the Partnership.[3] This Agreement shall be binding on and inure to the benefit of the parties and their respective heirs, executors, administrators, assigns and legal representatives.

***

5. [Brent] will pay the partnership obligation of approximately $800,000.00 which is owed to PNB FINANCIAL BANK out of the sale proceeds. Out of the initial advance, at least $50,000 will be paid to PNB FINANCIAL BANK. [Field] agrees to reimburse [Brent] $400,000.00 LESS a $50,000.00 offset which represents a capital contribution that was not made by [Brent] and LESS any other amounts of Partnership funds expended by [Brent] as general partner of the Partnership for non-partnership purposes which may have occurred during the two-year period immediately preceding the date of this instrument. For the same time period, any funds expended or used by [Field] or STEVE FIELD for non-partnership purposes shall be credited against the offsets. Any reimbursement will be paid to [Brent] on the earlier of the date on which the Partnership sells its entire interest in the Ranch, or February 10, 2006.

(Capitalization in original).

The partnership at times ran its own cattle on the ranch, and from time to time cattle belonging to Brent's husband, and Maltese Cross Cattle Company, Ltd. also were pastured there. Brent's husband was primarily responsible for care of cattle on the ranch. In early 2003, Maltese Cross demanded compensation from the partnership for missing cattle and overpayment of fees under its pasturage agreement with the partnership. A March 11, 2003, agreement entitled "Assignment Agreement and Release" (which we will refer to as

---

[3] Brent treats the term "Partnership" in the contract as referring to the several entitles we are collectively identifying as the partnership in this opinion. We will assume Brent is correct.

3

the Maltese Cross assignment) fixed the amount of the Maltese Cross obligation at $281,529.

In pertinent part, the Maltese Cross assignment provided:

1.  As the result of a series of transactions between Maltese Cross and one or more of the entities described above and collectively referred to as JJ Cattle[4], JJ Cattle has become indebted to Maltese Cross.  All disputes regarding the amount of this debt have been resolved as a result of negotiations giving rise to this Agreement.  It has been agreed that the amount of the debt in question is $281,529.00.

***

3.  Reference is made below to that certain "Agreement For Sale Of Limited Partnership Interest," dated February 11, 2003 between Elizabeth C. Brent, as "Seller" and Martha C. Field, as "Purchaser" (the "Sale Agreement"). Pursuant to the Sale Agreement, Elizabeth C. Brent has agreed to sell to Martha C. Field all her interest in JJ Cattle.

***

4.  Pursuant to the terms of the Sale Agreement, Elizabeth C. Brent will receive an initial cash payment, in the amount provided in the Sale Agreement, on or before March 10, 2003 (the "Initial Payment").  Further, pursuant to the Sale Agreement, Elizabeth C. Brent has the right to obtain a reimbursement payment, as described in paragraph 5 of the Sale Agreement on or before February 10, 2006 (the "Reimbursement Payment").

5. [Brent and her husband] by execution of this agreement, do not admit any personal liability for the indebtedness to Maltese Cross described in paragraph 1 above.   [Brent and her husband] enter into the terms of this agreement for the purpose of compromise and to buy peace with Maltese Cross.

TERMS OF AGREEMENT

***

---

4 In the preceding paragraph of the assignment, the parties agreed that "JJ Cattle" collectively meant Brent, her husband, Field, J & J Cattle Family Limited Partnership, JJ Roundup, Inc., JJ Cattle Company, and Romero Creek Hunting Co.

4

3.  As collateral and security for payment of the Settlement Note,[5] [Brent] does hereby assign to Maltese Cross her interest and right to receive all amounts under the Reimbursement Payment ("the Final Assigned Payment") not to exceed the then outstanding obligation under the Settlement Note....

***

8.  The Reimbursement Payment shall be made by [Field], when due under the Sale Agreement, to the trust account of the law firm of Gibson, Ochsner & Adkins, LLP.  Upon receipt of such payment, the attorneys shall determine the amount payable to Maltese Cross under the Settlement Note and make immediate payment thereof to Maltese Cross.  Any remaining funds shall be remitted to [Brent],....

9.  Notwithstanding any contingencies which may be set forth in paragraph 5 of the Sale Agreement, [Field] does hereby guarantee that the amount payable as the Final Assigned Payment shall not be less than $170,000.

While the ranch was marketed for sale, a dispute arose between Field and Brent. It centered chiefly on amounts due Brent on sale of the ranch through the reimbursement clause of paragraph 5 of their February 2003 contract.  As a result, Brent filed suit against Field and J & J Family Limited Partnership, Thomas & Watson Trucking, Inc., and American Express Travel Related Services Company, Inc.[6]  Meanwhile, Field sold the ranch.  By agreement of Brent, Field and J & J, $750,000 of the sale proceeds was placed in an escrow account with Amarillo National Bank.

---

[5] Elsewhere in the assignment, Maltese Cross acknowledged that Brent's husband had conveyed to it his half interest in a residential property, for which Maltese Cross reduced its claim by $35,000, and Brent and her husband "jointly and severally" agreed to pay the remaining $246,529 under the terms of a promissory note identified as the "Settlement Note."

[6] Thomas & Watson trucked cattle and American Express provided a credit card account for the partnership.  Through counterclaims, they each sought collection of allegedly unpaid partnership debt.  A settlement was reached with American Express before trial, but the issue of liability for the Thomas & Watson claim was tried.

Field obtained a partial summary judgment offsetting sums Brent sought under the agreement by $244,964.90.[7] Following a bench trial, the court orally rendered judgment, later memorialized in a writing signed January 25, 2008. In part, the judgment divided the escrowed funds, giving $59,875.43 to Brent, an amount to Thomas & Watson, and the balance to Field. Brent timely appealed.

Analysis

Through her first, second, and third issues Brent argues no evidence supported the trial court's implicit findings that under paragraph 2 of the February 2003 contract, Field was not bound to indemnify Brent for the Maltese Cross, American Express, and Systems and Services Technology, Inc.[8] claims. Our resolution of these issues turns on the intention of the parties expressed in the February 2003 contract and the Maltese Cross assignment.

We review a trial court's construction of an unambiguous contract de novo. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.,* 995 S.W.2d 647, 650 (Tex. 1999). We construe the contract as a matter of law. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex. 1983). In conducting a de novo review, we exercise our own judgment and redetermine each legal

---

[7] The partial summary judgment granted Field offsets against the reimbursement due Brent under paragraph 5 of their contract for a portion of the Maltese Cross obligation ($182,498.72), the capital contribution ($50,000), and the Case Credit Corporation obligation ($12,466.18). Despite the partial summary judgment, these and other issues of reimbursement and offset were submitted for trial.

[8] Following an alleged default in payment, Systems & Services Technology, Inc., handled repossession for the lienholder of a 2000 Ford pickup. Although titled in Brent's name, the parties agreed in the February 2003 contract that the pickup was a partnership asset. Field agreed in the contract to make the payments on the pickup, or cause the partnership to do so.

issue. *Quick v. City of Austin,* 7 S.W.3d 109, 116 (Tex. 1999). When construing a written contract, the primary concern of the court is ascertaining the true intentions of the parties as expressed in the instrument. *Coker,* 650 S.W.2d at 393. To achieve this objective, the court examines and considers the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none are rendered meaningless. *Id.* No single provision taken alone is given controlling effect; rather, all the provisions are considered with reference to the entire instrument. *Id.* The court takes the intention of the parties from the instrument itself and not the parties' present interpretation. *Calpine Producer Services, L.P. v. Wiser Oil Co.,* 169 S.W.3d 783, 787 (Tex.App.–Dallas 2005, no pet.). Instruments pertaining to the same transaction may be read together to ascertain the intent of the parties, even if the parties executed the instruments at different times*. Fort Worth Indep. Sch. Dist. v. City of Fort Worth,* 22 S.W.3d 831, 840 (Tex. 2000).

From a reading of the February 2003 contract, it is immediately apparent that the indemnity provision of paragraph 2 was not intended to be absolute. The indemnity provision flatly states that Field agrees to indemnify Brent and her husband "from liability for any and all obligations of the partnership." However, paragraph 3 of the contract provided circumstances under which Brent would be charged, without indemnification, for half the partnership's obligation to Case Credit Corporation.[9] More significantly, paragraph

_____

[9] In relevant part, paragraph 3 provided:

In the event the farm is sold, and [Field] is unable to sell the tractor and other farm equipment to the Purchaser of the farm, [Field] will also be allowed, as an offset against the $400,000.00 reimbursement described in Paragraph 5, an amount equal to one-half (½) of any payments that are required to be made to Case Credit Corporation in order to obtain a release of the Case leases for the tractor and other farm machinery.

7

5 of the contract bound Brent to pay the entirety of the partnership's $800,000 obligation to PNB Financial Bank and limited the amount of her reimbursement from Field to no more than $350,000. And Brent's $350,000 reimbursement under paragraph 5 was subject to reduction by the amount of any partnership funds expended by Brent during the preceding two years for non-partnership purposes. It is thus clear the parties contemplated the existence of partnership obligations not subject to indemnification under paragraph 2.

The Maltese Cross assignment, executed a month later by the parties to the contract, and Brent's husband and Maltese Cross, made express reference to the contract and Brent's paragraph 5 reimbursement right. It made no reference, however, to the paragraph 2 indemnification provision. By the assignment, Brent and her husband bound themselves to pay the Maltese Cross claim and Brent transferred to Maltese Cross a substantial amount of her potential reimbursement under paragraph 5. In other words, she assigned money due her from Field as partial indemnification for paying a partnership obligation, the PNB Financial Bank debt, to satisfy the claim of Maltese Cross, with no expressed regard or reference to a claim of indemnification.[10] For her part, in the assignment, Field guaranteed Brent's reimbursement under paragraph 5 would not be less than $170,000.[11]

Construing the February 2003 contract and the Maltese Cross assignment together, we conclude the parties intended the Maltese Cross claim, like other claims identified or

---

[10] In the related security agreement, Brent and her husband agreed that their personal liability for the Maltese Cross claim was joint and several, again without expressed reference to a claim against Field for reimbursement.

[11] On the sale of the ranch, Field paid Maltese Cross, pursuant to the assignment, $182,498.72.

8

referred to in the contract, was not subject to the indemnification provision of its paragraph 2.

Brent had an American Express credit card account which was used for the business of Romero Creek and the other entities she and Field owned. After February 11, 2003, Field and her husband chose not to pay the account balance and used the card for further purchases. Brent made the minimum monthly payment required by American Express. Shortly before trial, Field negotiated a resolution of the account with American Express, disposing of the account balance. At trial, Brent sought and was awarded a "credit" of $2,599.78 for payments she made on the account. Between Field's negotiated payment and the court's award, Brent was made whole for her American Express claim. Brent's claim of damage to her credit reputation as a result of Field's conduct is not supported by the evidence.

As noted, a pickup addressed in the February 2003 contract was repossessed. There was testimony that Field did not timely make a payment on the vehicle. Field countered that she mailed the payment but Brent instructed the lienholder's agent Systems and Services, Technology, Inc. to proceed with repossession. Brent contends her credit reputation was damaged as a result of the default and repossession. However, the record evidence does not support this contention. Brent's first, second, and third issues are overruled.

The trial court granted Field an offset of $102,460 against Brent's reimbursement under paragraph 5 for the allegedly wrongful conduct of Brent's husband. Through issues

9

four, five and eight, Brent argues the court's implicit finding of Field's entitlement to the offset is not supported by any evidence. Anything more than a scintilla of evidence is legally sufficient to support the court's finding. *See Leitch v. Hornsby,* 935 S.W.2d 114, 118 (Tex. 1996).

At trial, there was evidence that Maltese Cross made pasture payments of $102,460 to Brent's husband which were not remitted to JJ Cattle Company. Field contends the trial court properly charged Brent with that amount under paragraph 5's authorization for offsets against Brent's reimbursement for partnership funds expended by Brent for non-partnership purposes. But the conduct of Brent, not her husband, is the bargained-for standard of this provision. The evidence must support a theory connecting Brent to wrongful expenditures if the pasture payments are to offset the reimbursement.

Field argues the payment from Maltese Cross is attributable to Brent under the contract because when Brent's husband received the funds and used them for non-partnership purposes the funds were community property. According to Field's argument, because it is presumed that property acquired during marriage is community, it was for Brent to prove by clear and convincing evidence that the funds her husband received were his separate property.

Here, however, the issue is not the character of funds in the hands of Brent's husband, but conduct described by contractual language. Assuming, without deciding, that Brent's husband received and expended Maltese Cross payments for non-partnership purposes, the parties do not direct us to, and we do not find, any evidence giving rise to a

10

theory vicariously or directly binding Brent for the conduct of her husband.[12]  Under the express language of paragraph 5, there is no legal basis to charge Brent with her husband's allegedly wrongful receipt of Maltese Cross payments.

Within the grouping of issues under discussion here, Brent asserts through three sub-issues that no evidence supports the trial court's implicit findings of offset in favor of Field for (1) missing partnership hay, allegedly removed by Brent's husband, (2) partnership funds totaling $6,239.29 allegedly used by Brent's husband for a personal cattle truck lease payment and tires, (3) and interest on a capital contribution from Field to the partnership. The trial court, however, did not award an offset of Brent's reimbursement for any of these items.

We sustain Brent's issues four, five, and eight as to the offset of $102,460.  We overrule the associated sub-issues challenging offsets for hay, cattle truck expenditures, and interest on a capital contribution.  We do not reach the remaining sub-issues as their discussion is unnecessary to our disposition.  *See* Tex. R. App. P. 47.1.

By her sixth issue, Brent asserts she conclusively proved entitlement under paragraph 5 of the February 2003 contract to a credit of $114,591.82 against Field's offsets to the reimbursement.  She argues it was undisputed that Field and her husband expended partnership funds for non-partnership purposes.  In this respect, the contract provides, "any

---

[12] The marital relationship alone does not give rise to an agency relationship between spouses.  Tex. Fam. Code Ann. § 3.201(c) (Vernon 2006).

funds expended or used by [Field or her husband] for non-partnership purposes shall be credited against the offsets [of Brent's reimbursement]."

An appellant attacking the legal sufficiency of evidence supporting an adverse finding on which she had the burden of proof must show on appeal that a contrary finding was established as a matter of law. *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex. 1983). Brent's matter of law issue requires we first examine the record for some evidence supporting the trial court's implicit finding that she was not entitled to the credit of any offset, crediting evidence favoring it if a reasonable fact finder could and disregarding contrary evidence unless a reasonable fact finder could not. *See Central Ready Mix Concrete Co., Inc. v. Islas,* 228 S.W.3d 649, 651 (Tex. 2007). If no evidence appears to support the finding, we then examine the entire record to determine whether the contrary proposition is established as a matter of law. *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 241 (Tex. 2001) (per curiam); *Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.,* 766 S.W.2d 264, 276 (Tex.App.–Amarillo 1988, writ denied). A proposition is established as a matter of law when a reasonable fact finder could draw only one conclusion from the evidence presented. *See City of Keller v. Wilson,* 168 S.W.3d 802, 814-16 (Tex. 2005).

The evidence was not conclusive that the challenged expenditures of Field and her husband were for non-partnership purposes. Without objection the trial court admitted exhibits consisting of computer data entries, statements, and canceled checks offered to show misuse of partnership funds by Field and her husband. The items comprising the

exhibits, while perhaps illustrative of imprudent accounting practices, do not, on their face, conclusively prove misuse of partnership funds by Field and her husband.

Brent testified she was "questioning" food store charges and vehicle maintenance charges. She further qualified her awareness of the latter charge with, "I don't know." She agreed that charges for pet food for partnership hunting dogs did not fit what she believed appropriate. When asked on cross-examination if charges were for non-partnership purposes Brent responded "[j]ust from my personal knowledge and experience, I believe they're personal." Later, Brent agreed it was her assumption that the charges were for non-partnership purposes but she did not know. Still later Brent agreed she did not know if the charges were for non-partnership purposes.

Concerning amounts Brent attributed to the wrongful purchase by Field of health insurance for Field and her family, Field's husband testified that at the request of Brent's husband he accepted a bookkeeping position with the partnership. Compensation included salary and health insurance.

But even were we to assume no evidence supports the court's implicit finding, conclusive proof of Brent's proposition is lacking. The unsupported assumptions and subjective belief of Brent create no more than surmise or suspicion and in effect amount to no evidence. *See Seideneck v. Cal Bayreuther Associates,* 451 S.W.2d 752, 755 (Tex. 1970). ("when the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, such evidence is in legal effect no evidence, and it will not support a verdict or judgment"). And the testimony of Field's

13

husband on the insurance expenditure issue raises a question of fact which the trial court implicitly resolved against Brent. We, accordingly, overrule Brent's sixth issue.

In her seventh issue, Brent asserts there was no evidence to support the trial court's equal division between her and Field of the charge by Thomas & Watson for hauling cattle. Prior to trial, and based on a stipulation of the parties, the court signed an agreed order finding that in November 2002 Thomas & Watson performed the hauling for which it sought payment, its charge with interest was $7,769.19, and it incurred reasonable and necessary attorney's fees of $6,485.73. The order left for trial determination of the party or parties responsible for paying the Thomas & Watson obligation.

Field's husband testified Thomas & Watson was not paid because he did not believe the cattle hauled were partnership cattle. On cross-examination of Billy Ray Watson, a principal of Thomas & Watson, the following exchange occurred:

Q. Now I have no doubt that these cattle were hauled, but can you tell me, sir, who owned the cattle–

A. No.

Q. –as between [Brent's husband], [Brent's father-in-law], Maltese Cross, JJ, or someone else; can you tell me who owned the cattle?

A. No I can't.

Documentary evidence included canceled checks paid to Thomas & Watson and drawn on the accounts of "R. P. Brent IV Cattle," and "3 B Cattle Co." Watson testified of loading cattle for Brent's husband but he also acknowledged receiving checks from 3 B Cattle Co. He further testified that one load of cattle was taken from a location where the

14

"Brents" sometimes penned cattle. It is impossible to determine from the testimony whether "Brents" referred to Brent and her husband or her husband and father-in-law. There was no testimony explaining on whose behalf Brent's husband acted when he arranged for hauling the loads in question. Brent's husband invoked the Fifth Amendment privilege against self-incrimination when asked whose cattle Thomas & Watson hauled in 2002. As noted, at various times, cattle pastured on the Houghton Ranch belonged to the partnership, Maltese Cross, and Brent's husband. A voluminous trial exhibit contained the bills of lading and invoices of Thomas & Watson. Our examination of these records shows that bills of lading for shipments during November 2002 identify Brent's husband, 3 B Cattle, or Brent Ranch as shipper. A summary invoice, which according to Watson approximated the charges Thomas & Watson sought, indicates the purchaser of services was Brent's husband. Two bills included on the invoice show the shipper was the Brent Ranch. Of these, one bill indicates the cattle were loaded at the Houghton Ranch. Three bills on the summary list the Houghton Ranch as point of loading.

By the agreed order, the issue of which party to the suit was obligated for the Thomas & Watson obligation was tried. The court split the amount equally between Brent and Field. From the evidence presented, however, it is not possible to determine what, if any, charges are properly attributable to any of the parties to the underlying action. We must sustain Brent's seventh issue.

By her ninth issue, Brent argues the trial court's judgment is ambiguous in its apportionment between her and Field of the Thomas & Watson obligation and by twice taxing court costs in favor of Thomas & Watson. Field does not challenge by separate

15

appeal the award against her in favor of Thomas & Watson. *See* Tex. R. App. P. 25.1(c). Our disposition of Brent's seventh issue makes consideration of her ninth issue unnecessary. Tex. R. App. P. 47.1.

By her eleventh issue, Brent contends that as a matter of law she was entitled to an award of attorney's fees. In her live pleading, Brent alleged Field breached their February 2003 contract by not paying all sums due. Brent sought recovery of attorney's fees according to Chapter 38 of the Civil Practice and Remedies Code. Tex. Civ. Prac. & Rem. Code Ann. § 38.001 *et seq.* (Vernon 2008). Through the testimony of her attorney, Brent presented detailed evidence of the amount of attorney's fees expended and to be expended as well as opinion testimony that the fees charged were reasonable and necessary. To his testimony of the representation, counsel applied the nonexclusive factors prescribed by the Texas Supreme Court for determining the reasonableness of attorney's fees. *See Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 818 (Tex. 1997) (*citing* Tex. Disciplinary R. Prof. Conduct 1.04, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A (Tex. State Bar R. art. X, § 9)). The court granted Brent a money judgment of $55,634.88 plus prejudgment interest at the rate of six percent. Yet, it denied her an award of attorney's fees.

Whether a party is entitled to recover attorney's fees is a question of law for the trial court which we review de novo. *See Holland v. Wal-Mart Stores, Inc.,* 1 S.W.3d 91, 94, 95 (Tex. 1999). A party may recover reasonable attorneys's fees in a suit founded on a claim for breach of an oral or written contract. Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8)

(Vernon 2008). The party must prevail on a cause of action for which the recovery of attorney's fees is allowed and recover damages. *Green Int'l v. Solis,* 951 S.W.2d 384, 390 (Tex. 1997). Under section 38.001, an award of reasonable attorney's fees is mandatory if there is proof of the reasonableness of the fees. Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (Vernon 2008); *Recognition Communs., Inc. v. Am. Auto. Ass'n, Inc.,* 154 S.W.3d 878, 891 (Tex.App.–Dallas 2005, pet. denied); *Budd v. Gay,* 846 S.W.2d 521, 524 (Tex.App.–Houston [14th Dist.] 1993, no writ). A court possesses discretion to determine the amount of attorney's fees, but it lacks discretion to deny attorney's fees if they are proper under section 38.001. *Budd,* 846 S.W.2d at 524.

Field argues the trial court did not err by failing to award attorney's fees because she was sued for over $800,000 and "prevailed" on all but $55,000 of Brent's claim. But this is not the standard under section 38.001. A recovery of attorney's fees under section 38.001 is allowed even though the damages a party recovers are completely offset by the claim of the opposing party. *McKinley v. Drozd,* 685 S.W.2d 7, 10-11 (Tex. 1985). Thus while a party must prevail on a ground under 38.001, it need not obtain a net recovery. *Id.* Brent obtained a net recovery.

The main issue in this case was what, if any, amount was due Brent under the February 2003 contract. Pursuant to the contract, the trial court awarded Brent an amount of money. The trial court was without discretion to deny her an award of attorney's fees according to section 38.001. The amount of the award remains a question of fact which the trial court must resolve on limited remand. We sustain Brent's eleventh issue.

17

In her tenth issue, Brent complains that the trial court erred by ordering Amarillo National Bank to disburse the funds held in the escrow account according to specified amounts. Following judgment, but before the lapse of the trial court's plenary power, the bank intervened in the underlying case by interpleading the escrowed funds into the registry of the court. The bank was subsequently discharged by agreed order. The funds are the subject of a proceeding brought by Brent under Rule of Appellate Procedure 24 to suspend enforcement of the judgment. They currently remain in the registry of the trial court. Given our disposition of Brent's other issues, and the presence of the funds in the registry of the court, it is not necessary that we further address her tenth issue. Tex. R. App. P. 47.1.

Conclusion

Having addressed the appellate issues necessary to disposition of the appeal, we render judgment that Brent recover from defendants Martha C. Field and J & J Family Limited Partnership jointly and severally the sum of $158,094.88[13], prejudgment interest at the annual rate of 6%, post-judgment interest on the total sum at the annual rate of 6%, and costs of court.

The award to Brent of $4,240.55 as prejudgment interest is vacated and the case remanded to the trial court for calculation of prejudgment interest consistent with this opinion.

---

[13] This amount is inclusive of and not in addition to the $55,634.88 awarded in the trial court's judgment.

18

That portion of the judgment denying Brent an award of attorney's fees is reversed and the case remanded to the trial court for determination of a reasonable award of attorney's fees for Brent according to Chapter 38. Tex. Civ. Prac. & Rem. Code Ann. § 38.001 *et seq.* (Vernon 2008).

That portion of the judgment awarding Thomas & Watson Trucking, Inc., recovery from Brent is reversed and judgment is rendered that Thomas & Watson Trucking, Inc., take nothing by its counterclaim against Brent.

We vacate the following portion of the judgment:

> The Court references that certain Escrow Agreement dated October 5, 2005, between Amarillo National Bank, J & J Cattle Family Limited Partnership, JJ Roundup, Inc., Martha C. Field, and Elizabeth C. Brent.
>
> The Court ORDERS Amarillo National Bank to disburse the escrow funds as follows:
>
> $59,875.43 shall be disbursed to Elizabeth C. Brent;
>
> $7,127.46 shall be disbursed to Thomas & Watson Trucking, Inc.; and
>
> The balance of the escrow funds shall be disbursed to Martha C. Field.

We otherwise affirm the judgment of the trial court.

The proceedings in the trial court on remand and its resulting judgment shall be according to the following instructions. This is a limited remand.[14] The issues for

---

[14] *See Hudson v. Wakefield,* 711 S.W.2d 628, 630 (Tex. 1986); *Hansen v. Acad. Corp.,* 961 S.W.2d 329, 331 (Tex.App.–Houston [1st Dist.] 1997, pet. denied); *cf. In re Marriage of Stein,* 190 S.W.3d 73, 75 (Tex.App.–Amarillo 2005, no pet.) (when an appellate court remands a case and limits a subsequent trial to a particular issue, the trial court is restricted to a determination of that particular issue).

19

determination by the trial court on remand are the amount of prejudgment interest Brent is due according to this opinion and our judgment, and an award of reasonable attorney's fees for Brent. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001 *et seq.* (Vernon 2008). After determining these two issues, the trial court shall sign a judgment containing: (1) its determinations on the issues remanded; (2) the matters on which we have rendered judgment; and (3) the matters we have affirmed. Concurrent with signing its judgment on remand, and according to the terms of that judgment, the trial court shall issue an order directing the district clerk to distribute the funds held in the trial court's registry in this case to Brent, Thomas & Watson, and Field. The order shall further provide for payment to Hartley County according to statute. Tex. Local Gov't Code Ann. § 117.054 (Vernon 2008).


James T. Campbell
Justice