

# IN THE
# TENTH COURT OF APPEALS

## No. 10-14-00228-CV

**SUSAN J. SIMMONS D/B/A 342 GRILL & BAR,**

**Appellants**

 **v.**

**BLACKSTONE DEVELOPERS, LLC,**

**Appellee**

**From the County Court at Law
Ellis County, Texas
Trial Court No. 14-C-3312**

## MEMORANDUM OPINION

In three issues, appellant, Susan J. Simmons d/b/a 342 Grill & Bar, challenges the trial court's judgment entered in favor of appellee, Blackstone Developers, LLC ("Blackstone"). Because we conclude that Blackstone did not have the right to terminate the lease by virtue of Simmons asking for a transfer of the lease, we reverse the trial court's judgment and remand for proceedings consistent with this opinion.

## I. BACKGROUND

This is a contract-interpretation case involving a lease between Simmons and Blackstone pertaining to the premises located at 205 Main Street in Red Oak, Texas. Specifically, on February 28, 2011, Simmons entered into a long-term lease with Blackstone for an initial term of five years and three five-year options to be exercised at Simmons's discretion. Simmons operated the 342 Grill & Bar at the location covered by the lease.

In 2014, Simmons received an offer to buy the restaurant for $140,000. To complete the sale, Simmons repeatedly requested Blackstone's consent to transfer her leasehold interest to the purchaser. Blackstone property manager Randy Shelly testified that he ignored Simmons's requests for consent, which, as Shelly testified, demonstrated that Blackstone did not consent to any transfer of Simmons's leasehold. Because Shelly ignored Simmons's request for consent, Simmons and her husband, Don, sent Shelly a letter dated March 4, 2014, indicating that: (1) they have "a very qualified buyer for our restaurant" with many years of experience and a net worth of over $4 million; (2) the buyer hoped to take over the restaurant by March 15, 2014; and (3) the deal could "slip away" without Blackstone's "prompt attention."

On March 11, 2014, Shelly responded to the Simmons' March 4, 2014 letter, stating that, under Section 11 of the lease, Blackstone "hereby exercises its right to terminate the Lease. Such termination shall be effective as of March 15, 2014, the anticipated effective date of the Transfer, as indicated in the Transfer Notice." Blackstone demanded that Simmons surrender the premises on March 15, 2014.

Simmons refused to vacate the premises unless Blackstone consented to the transfer. Blackstone replied that it would consent to the transfer in exchange for $40,000 or $50,000. Simmons refused to pay the requested amount, and Blackstone sent its Notice to Vacate on March 24, 2014. In this notice, Blackstone demanded that Simmons shut down her restaurant and vacate the premises within seventy-two hours. Simmons refused.

Blackstone subsequently filed its Petition for Forcible Detainer on April 27, 2014, in the Ellis County Justice Court, Precinct 4. In its petition, Blackstone asserted that Section 11(b) of the lease authorized the termination of Simmons's leasehold interest. The Justice Court dismissed the proceeding and awarded Simmons her reasonable and necessary attorney's fees.

Thereafter, Blackstone appealed the Justice Court's judgment to the Ellis County Court at Law No. 1 for a de novo review. Following a bench trial, the trial court issued a letter stating the following:

> The outcome of this case is governed by Section 11(b) of the lease between the parties. While the provision allowing for termination is extremely harsh and leaves the tenant utterly at the mercy of the landlord, it was nevertheless contractually agreed to by the parties and is clear. Landlord was entitled to terminate under 11(b)(ii) and it elected to do as evidenced by the March 11th letter.

The trial court then issued its judgment awarding Blackstone possession of the premises and ordering the issuance of a writ of possession in Blackstone's favor. This appeal followed.

## II. STANDARD OF REVIEW

The construction and meaning of an unambiguous contract is a question of law. *Ganske v. Spence*, 129 S.W.3d 701, 707 (Tex. App.—Waco 2004, no pet.). In construing the written agreement, the primary concern of the court is to ascertain the true intentions of the parties as expressed within the four corners of the instrument. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *see Calpine Producer Servs., L.P. v. Wiser Oil Co.*, 169 S.W.3d 783, 787 (Tex. App.—Dallas 2005, no pet.). We consider the entire writing and attempt to harmonize and give effect to all the provisions of the contract by analyzing the provisions with reference to the whole agreement. *Frost Nat'l Bank v. L&F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (per curiam).

## III. SECTION 11(B) OF THE LEASE

In her second issue, Simmons argues that by applying Section 11(b)(ii) as the controlling lease provision, the trial court ignored limiting language within the provision itself that indicated that the right of termination existed only in the context of a completed or actual transfer.

The operative language of the lease, as contained in Section 11(b), provides the following, in relevant part:

> **(b)** **Landlord's Options.** Within 30 days after receipt of all required Transfer information, Landlord will give Tenant written notice of its election (i) to consent to the Transfer, subject to (A) this Lease, (B) Landlord's approval of the Transfer instrument, (C) execution and delivery by Tenant and Transferee of Landlord's then-current standard form consent agreement, and (D) Tenant paying Landlord's required Transfer processing fee; or (ii) to terminate this Lease as of the anticipated effective date of the Transfer as to the space and for the period covered by such Transfer, in which event Tenant will be relieved of its obligations

with respect to the terminated interest; or (iii) not to consent to the Transfer, in which event this Lease will continue in full force and effect.

The trial court and Blackstone relied upon Section 11(b)(ii) to support the position that the mere fact that Simmons informally requested a transfer of her leasehold interest triggered Blackstone's option to terminate the lease. We disagree with this assertion.[1]

A plain reading of the lease shows that Section 11(b)(ii) only applies when there is a transfer. Specifically, a review of the plain language of Section 11(b)(ii) reveals that Blackstone is authorized "to terminate this Lease as of the anticipated effective date of the *Transfer* as to the space and for the period covered by such *Transfer*." (Emphasis added). We believe this language contemplates that a transfer must occur, especially considering that any termination is specifically tied to the effective date of the transfer and the space and time period covered by the transfer.

Therefore, because a transfer has not occurred, we do not agree that the mere requesting of consent to transfer Simmons's leasehold interest triggered Section 11(b)(ii) of the lease. Accordingly, we conclude that the trial court erred in determining that the lease had terminated, and instead, the lease remains in full force and effect. Thus, we sustain Simmons's second issue.[2]

---

[1] We note that all the documentation necessary for a formal consideration of a transfer was never provided to Blackstone. Simmons did what most prudent tenants would have done and was trying to determine if Blackstone would consent before moving forward with the prospective buyer.

[2] Because we have sustained Simmons's second issue, we need not address Simmons's first or third issues. *See* TEX. R. APP. P. 47.1.

## IV. ATTORNEY'S FEES

In her prayer, Simmons requests an award of reasonable attorney's fees in the amount of $8,875. Section 16(f) of the lease provides that, in any dispute regarding the lease, "the prevailing party will be entitled to recover reasonable attorney's fees, court costs[,] and expenses from the other party." *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006) ("For more than a century, Texas law has not allowed recovery of attorney's fees unless authorized by statute or contract."). However, in the trial court, Simmons was not the prevailing party and, as such, was not awarded any attorney's fees. In any event, in support of her attorney's fees request, Simmons directs us to Attachment 5 in the appendix to her appellate brief, wherein Simmons's attorney executed an affidavit in support of the request for attorney's fees.

First, we note that an appellate court may not consider matters outside the appellate record, and attachment of documents as appendices to an appellate brief does not constitute formal inclusion in the record. *See* TEX. R. APP. P. 34.1 ("The appellate record consists of the clerk's record and, if necessary to the appeal, the reporter's record."); *see also Kuntze v. Hall*, 371 S.W.3d 600, 601 (Tex. App.—Waco 2012, order); *Poston v. Wachovia Mortg. Corp.*, No. 10-14-11-00485-CV, 2012 Tex. App. LEXIS 3608, at *3 n.2 (Tex. App.—Houston [14th Dist.] May 8, 2012, no pet.) (mem. op.) (citing *Bencom Mgmt. & Gen. Contracting, Inc. v. Boyer, Inc.*, 178 S.W.3d 198, 210 (Tex. App.—Houston [14th Dist.] 2005, no pet.)). Furthermore, it is well-settled that the determination of whether a party may recover reasonable attorney's fees is a question of law for the trial court, which an appellate court reviews de novo. *See Brent v. Field*, 275 S.W.3d 611, 621

(Tex. App.—Amarillo 2008, no pet.) (citing *Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 94-95 (Tex. 1999)); *see also Pharia LLC v. Childers*, No. 10-12-00241-CV, 2013 Tex. App. LEXIS 9995, at *4 (Tex. App.—Waco Aug. 8, 2013, no pet.) (mem. op.). Accordingly, we conclude that the trial court is in a better position and, therefore, should determine the amount of attorney's fees to which Simmons is entitled in light of our disposition of this matter. *See Holland*, 1 S.W.3d at 94-95; *Brent*, 275 S.W.3d at 621; *see also Childers*, 2013 Tex. App. LEXIS 9995, at *4.

## V. CONCLUSION

Based on the foregoing, we reverse the judgment of the trial court and remand for proceedings consistent with this opinion.


AL SCOGGINS
Justice

Before Chief Justice Gray,
          Justice Davis, and
          Justice Scoggins
Reversed and remanded
Opinion delivered and filed December 18, 2014
[CV06]

