

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-23-00068-CV

---

**JAMES WILLIAMS II, INDIVIDUALLY AND AS TRUSTEE OF THE JAMES IRWIN WILLIAMS TESTAMENTARY TRUST AND THE WILLIAMS LAND TRUST, APPELLANT**

V.

**SHAWN KENNEDY, APPELLEE**

---

On Appeal from the 100th District Court
Carson County, Texas
Trial Court No. 12524, Honorable Stuart Messer, Presiding

---

December 9, 2024

MEMORANDUM OPINION

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

This appeal arises from disputes over a mediated settlement agreement aimed at resolving conflicts surrounding a large ranch. Following a jury trial, both Shawn Kennedy and James Williams II, in his individual capacity and as trustee of the James Irwin Williams Testamentary Trust and the Williams Land Trust,[1] challenged the trial court's judgment.

---

[1] As used herein "Williams" shall, as the context requires, refer to James Williams, II, individually or to James Williams, II, in his individual and representative capacities.

We conclude the trial court reversibly erred in awarding Kennedy $6,000 in attorney's fees for Williams's conversion of Kennedy's personal property, and accordingly render judgment that Kennedy take nothing by this fee award. In all other respects, we affirm the judgment of the trial court.

**Background**

In 2019, Kennedy and Williams were in litigation in Potter County, Texas, over the estate of Williams's father, James Irwin Williams. Kennedy, the manager of the ranch owned by the elder Williams, claimed employment benefits under a codicil to his will.

After mediation in April 2019, Kennedy and Williams (as trustee of his father's testamentary and land trusts), entered into a mediated settlement agreement (MSA) to resolve the estate dispute. The MSA was a complex agreement covering many aspects of a 20-year lease of a large ranch,[2] with such lease to begin January 1, 2020. Among its many provisions, the MSA required Kennedy to relinquish claims under the will in exchange for the ability to lease the acreage, facilities, and residence on the Williams ranch. Williams would remain as trustee of the relevant trusts and retain control over the trust property. Relevant to this dispute, the MSA required Kennedy to turn over to Williams certain personal property, including a copy of all vehicle keys and ranch keys by May 24, 2019. Kennedy interpreted "ranch keys" to include gate and lock keys.

Disputes over the MSA soon followed, prompting Kennedy to file a motion for enforcement and interpretation of its terms. In February 2020, Williams removed a cattle

---

[2] The parties disagree on the ranch's size. Kennedy's affidavit cites 5,576 acres in Potter and Carson Counties, while Williams calculates 6,078 acres, including highway right-of-way.

2

squeeze chute and a golf cart belonging to Kennedy's daughter. Kennedy responded by suing Williams in Carson County, both individually and as trustee, for conversion, breach of lease, and seeking injunctive relief. In August 2020, a Potter County district court deemed the MSA an enforceable lease agreement between Kennedy and Williams as trustee. The Carson County district court issued a temporary injunction, ordering Williams to return the cattle squeeze chute and golf cart.

In February 2022, a jury trial ensued in Carson County, with the verdict predominantly favoring Kennedy. As will be discussed below, the jury charge was no model of clarity, yet the parties did not object to it. The jury's verdict, based on 17 broad-form questions found, in relevant part:

- Williams, as trustee of the testamentary trust,[3] converted Kennedy's property. Kennedy was awarded $568.16 in expenses to recover the property and $6,000 in attorney's fees (Questions 1-3).

- Williams, as trustee of the testamentary trust, unlawfully removed a squeeze chute from the ranch. No damages or attorney's fees were awarded for this act (Questions 4-6).

- Harm to Kennedy from conversion and removal of the squeeze chute "resulted from malice," which was defined to mean "a specific intent by [Williams] to cause substantial injury or harm to [Kennedy]." No exemplary damages were awarded (Question 12).

- Williams did not fail to comply with the lease (Question 7).[4]

---

[3] Although Williams was sued individually and as trustee, the charge defined "Williams II" (the name used throughout the charge) as "Trustee of the Testamentary Trust or as Trustee of the Williams Land Trust." In Question 2, the jury found that Williams was acting only as trustee of the testamentary trust at the time he converted the property.

[4] The jury was not instructed to answer Questions 8-10 if they answered "No" to Question 7.

3

- Kennedy was awarded $50,000 in attorney's fees "for the unlawful removal claim and the failure to comply claim." (Question 14)[5]

- Kennedy failed to comply with the material terms of "the agreement" with Williams (Question 15). "Agreement" was defined elsewhere in the charge to mean the MSA, though Question 15 also included definitions for "sublease," "lease," and "assignment." The jury identified May 24, 2019, as the date Kennedy failed to comply (Question 16).

- Williams was awarded $100 in damages for Kennedy's breach (Question 17).

On December 5, 2022, the trial court signed a judgment. It found Williams liable, both individually and as trustee, for converting Kennedy's property. The court awarded Kennedy $568.16 in recovery costs and $6,000 in attorney's fees related to the conversion. The judgment also found that Williams, individually and as trustee, violated Texas Property Code section 93.002 by unlawfully removing the squeeze chute. Kennedy was awarded $500 in statutory damages and $50,000 in trial attorney's fees. However, the jury awarded no appellate attorney's fees. The judgment characterized Kennedy's missed deadline for returning vehicle and ranch keys as a breach of a collateral, independent promise. Consequently, the court ruled that this breach neither invalidated the rest of the agreement nor excused Williams from his lease obligations. The judgment awarded $100 to Williams for Kennedy's non-compliance.

The judgment does not explicitly mention the jury's malice finding. However, it incorporates by reference "for all purposes" the court's charge and jury verdict, which

---

[5] Williams did not object to the court's submission of a single broad-form attorney's fee issue that potentially commingled valid and invalid grounds for an award of attorney's fees. *See Crown Life Insurance Co. v. Casteel*, 22 S.W.3d 378, 388 (Tex. 2000); *Harris Cnty. v. Smith*, 96 S.W.3d 230, 232–33 (Tex. 2002).

4

include the jury's finding that Williams acted with malice in converting Kennedy's property and/or unlawfully removing the cattle squeeze chute.

**Analysis**

I. Williams's Appeal

 (a) Did Kennedy materially breach the MSA?

In Williams's first two issues, the question is whether Kennedy breached a material obligation of the MSA.[6]  Although the jury found that Kennedy failed to comply with the MSA on this date, the trial court disregarded this finding, concluding that the breach was not material.  Williams contends the failure to provide vehicle and ranch keys was not a collateral, independent promise but went to the heart of the agreement, justifying termination.  Williams also argues that other alleged breaches could have been the basis for the jury's finding of a material breach.  We overrule the issues for the reasons discussed below.

A trial court may disregard any jury finding on a question that has no support in the evidence.  *Oscar Renda Contracting, Inc. v. Bruce*, 689 S.W.3d 305, 311 n.26 (Tex. 2024) (citing TEX. R. CIV. P. 301).  When determining whether legally sufficient evidence supports a jury's finding, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a

---

[6] The parties argue whether Kennedy breached "the Lease," but the jury charge defined "the agreement" as "the Mediated Settlement Agreement between Shawn Kennedy and James Williams II as Trustee of the Trusts."  The lease, signed in 2020 after the MSA, was a separate agreement.  Because the parties did not object to this portion of the jury charge, we analyze the evidence based on the charge as given.  *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 875 (Tex. 2014); *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 715 n.4 (Tex. 2001).

5

reasonable factfinder could not. *4Front Engineered Sols., Inc. v. Rosales*, 505 S.W.3d 905, 908–09 (Tex. 2016); *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). Evidence is legally sufficient if there is more than a scintilla of evidence on which a reasonable juror could find the fact to be true. *Id.*

A material breach occurs when it deprives the non-breaching party of the benefit it could have reasonably anticipated from full performance. *Bartush-Schnitzius Foods Co. v. Cimco Refrigeration, Inc.,* 518 S.W.3d 432, 436 (Tex. 2017). Whether a breach of contract is "material" typically presents a fact question but may be resolved as a matter of law if reasonable minds could not disagree. *Id.*

Texas courts, and the jury in this case, are guided by the RESTATEMENT (SECOND) OF CONTRACTS § 241 to determine materiality.

> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
>
> (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
>
> (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
>
> (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;
>
> (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*Id. See also Mustang Pipeline Co. v. Driver Pipeline Co.,* 134 S.W.3d 195, 199 (Tex. 2004).

The Supreme Court of Texas has long held that when parties have independent contractual obligations, a delay in performance does not necessarily invalidate the

6

contract or absolve the other party's obligations. *Scarborough v. Arrant*, 25 Tex. 129, 133 (1860). If covenants are not mutually dependent and a breach can be remedied in damages, the non-breaching party is generally not excused from performance due to the other's earlier breach. *Hanks v. GAB Bus. Services, Inc.*, 644 S.W.2d 707, 708 (Tex. 1982).

Guided by this precedent, we hold that the trial court did not err in disregarding the jury's finding that Kennedy materially breached the MSA by failing to timely deliver keys to Williams. The essence of the MSA was not the delivery of 35-40 keys, but to make peace between the parties, settle an estate dispute, and anticipate a future 20-year lease for the land. The MSA set out Kennedy's responsibility to deliver the keys as a subsidiary promise, one in a list of independent obligations owed by Kennedy to Williams.

Kennedy's breach could be (and was) remedied in compensation: the jury awarded Williams $100 in damages, an amount Williams himself deemed "more than fair." This modest sum underscores that although delayed key delivery was a focus of the litigants at trial, it did not deprive Williams of the benefit he could have reasonably anticipated from full performance. *See Bartush-Schnitzius Foods*, 518 S.W.3d at 436. A review of the record shows that while Williams faced inconvenience due to Kennedy's failure to deliver all the keys, necessitating the use of bolt cutters for access, this impediment did not substantially deprive Williams of the MSA's essential benefits or frustrate the agreement's core purpose. The essence of the contract—to settle an estate dispute and establish a long-term lease arrangement—remained intact despite this setback. *See Hanks*, 644 S.W.2d at 708.

7

For the reasons discussed above, we also find no evidence supporting a material breach by Kennedy due to Williams's other allegations of Kennedy breaching the MSA. The MSA never stated a deadline for Kennedy's performance of these obligations, so a reasonable time for performance is implied. *Hughes v. Tom Green Cty.*, No. 03-22-00405-CV, 2023 Tex. App. LEXIS 9215, at *9 (Tex. App.—Austin Dec. 8, 2023, no pet.) (mem. op.).

Regarding Williams's allegation of other breaches, we note that if the jury intended to make such a finding, the evidence shows they occurred well after the May 24, 2019 date the jury found Kennedy to have breached his agreement with Williams:

- Failure to name Williams Testamentary Trust as an additional insured (after January 2020, when the parties executed a lease);

- Exceeding animal units on the ranch (August-October 2021);

- Failing to control prairie dogs (summer/fall 2021);

- Unauthorized use of land for grazing (late December 2020 or 2021).

These allegations therefore could not have formed the basis for the jury's finding. The trial court was justified in disregarding the jury's implicit finding of a material breach.

We overrule Williams's first two issues.

(b) Is Williams entitled to declaratory relief?

In his third issue, Williams argues that the trial court should have granted his request for a declaratory judgment under the Uniform Declaratory Judgments Act (UDJA)[7]

---

[7] TEX. CIV. PRAC. & REM. CODE ANN §§ 37.001–.011.

8

allowing him to occupy the ranch due to Kennedy's prior material breaches of the MSA.[8]

However, we find no error in the trial court's decision to deny this request. We previously determined that Kennedy's alleged breaches, including those found by the jury, were not material as a matter of law. Therefore, Williams was not excused from fulfilling his future obligations under the MSA, and Kennedy was not barred from occupying the property.

Williams's third issue is overruled.

(c) Is Kennedy entitled to trial attorney's fees?

In issues 4–6, Williams challenges the attorney's fees awarded to Kennedy. As we interpret his fourth issue, Williams's fourth issue asks us to reconcile allegedly conflicting jury awards for attorney's fees reflected in the judgment. The jury answered three questions related to Kennedy's recovery of attorney's fees:

| QUESTION NUMBER | DESCRIPTION | JURY ANSWER |
|---|---|---|
| **Question 3(C)** (predicated on a "Yes" answer to the question of whether Williams, as trustee, converted unspecified property that Kennedy owned or had the right to possess and use) | Fees incurred in recovering the property converted by Williams | • $6,000 |
| **Question 6(C)** (predicated on a "Yes" | Fees incurred in recovering the squeeze | • $0 |

---

[8] Williams concedes that his argument hinges on our upholding the jury's answer to Question 15: "Assuming for this argument that the jury finding that Kennedy materially breached the lease is upheld, then Williams was entitled as a matter of law to the finding sought in his declaratory judgment action, that the lease had terminated and Kennedy no longer had a right to occupy the ranch."

9

| answer to the question of whether Williams, as trustee, unlawfully removed the squeeze chute from the leased premises) | chute removed by Williams | |
|---|---|---|
| **Question 14** (not predicated on a "Yes" finding to any question) | Fee for legal services "for the unlawful removal claim and the failure to comply claim" | • $50,000 in the trial court;<br><br>• $0 in the court of appeals;<br><br>• $0 in the Supreme Court of Texas. |

Despite having failed to object when the jury charge was presented, the parties now ask this Court to divine meaning from the jury's labyrinthine verdict. As an example, Williams argues in his fourth issue that because the jury found he did not fail to comply with the lease, the $50,000 attorney's fee awarded in Question 14 must be solely for the "unlawful removal claim," which was previously addressed in other portions of the charge. Williams asks us to resolve this conflict between what appear to be conflicts in the jury's findings by simply nullifying the $50,000 attorney's fee award. We decline Williams's invitation. Preservation of error on a claim that jury findings are in conflict requires the complaining party raise an objection in the trial court before the jury is discharged. TEX. R. CIV. P. 295. *Columbia Med. Ctr. of Las Colinas v. Bush ex rel. Bush,* 122 S.W.3d 835, 861 (Tex. App.—Fort Worth 2003, pet. denied). Because the issue was not presented to the trial court before the jury was discharged, we will not attempt to reconcile any conflicting findings. Williams's fourth issue is overruled.

In his fifth issue, Williams contends that he could not have violated Texas Property Code § 93.002 (which potentially serves as the basis for the $50,000 attorney's fee award)

because Kennedy's material breach of the MSA "as a matter of law" relieved Williams of landlord obligations and terminated "Kennedy's right to possess the taken property." As we have already explained, we do not find Kennedy's alleged breaches to be material as a matter of law. Consequently, such breaches did not relieve Williams of his obligations under the MSA or Kennedy of any right to possess the converted property. For these reasons, we reject Williams's argument and overrule his fifth issue.

In his sixth issue, Williams argues that Kennedy was improperly awarded $6,000 in attorney's fees for conversion, as reflected in the jury's answer to Question 3(c), because such fees are not recoverable for such a tort.[9] On this issue we agree with Williams. Conversion is an intentional tort. *Sepeda v. Davis,* No. 07-18-00180-CV, 2019 Tex. App. LEXIS 2204, at *6 (Tex. App.—Amarillo Mar. 20, 2019, no pet.) (mem. op.). In Texas, attorney's fees may be recovered from an opposing party only when authorized by statute or by contract between the parties. *Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 817 (Tex. 2006).

We have held for nearly a century that attorney's fees do not constitute "expenses" incurred for regaining possession of converted personal property. *Sec. State Bank v. Spinnler*, 55 S.W.2d 128, 129 (Tex. App.—Amarillo 1932, writ dism'd). Other appellate courts have also upheld this principle. *Wiese v. Pro Am Services, Inc.*, 317 S.W.3d 857, 861 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *Donnelly v. Young*, 471 S.W.2d 888, 891 (Tex. App.—Fort Worth 1971, writ ref'd n.r.e.). We sustain Williams's sixth issue.

---

[9] Williams preserved this complaint via a "motion for new trial or alternatively reform the judgment." *See John Deloach Enterprises, Inc. v. Telhio Credit Union, Inc.*, 582 S.W.3d 590, 601 (Tex. App.—San Antonio 2019, no pet.) (holding appellant preserved issue for appeal by asserting it in motion for new trial). Williams requested that the judgment "be reformed to remove this award." The motion was overruled by operation of law. TEX. R. CIV. P. 329b(c); TEX. R. APP. P. 33.1(b).

11

(d) Is Williams liable in his personal capacity?

In his seventh issue, Williams contends the trial court erred in holding him liable for unlawful removal in both his individual and representative capacities when the jury found he was acting as trustee when engaging in the conduct. The jury found Williams committed conversion and unlawful removal of a fixture from leased property, and that he did so as trustee of the testamentary trust. The judgment, however, holds Williams liable both individually and as trustee.

The Texas Property Code states: "Subject to the rights of exoneration or reimbursement under Section 114.0621, the trustee is personally liable for a tort committed by the trustee or by the trustee's agents or employees in the course of their employment." TEX. PROP. CODE ANN. § 114.083(d). Conversion is an intentional tort. *Sepeda*, 2019 Tex. App. LEXIS 2204, at *6. Williams does not challenge the sufficiency of evidence supporting a finding that his conduct violated Texas Property Code section 93.002. We find no reason why the alleged violation of Property Code section 93.002(b) is not a tort created by statute, nor why it would not fall within the meaning of "a tort" under Property Code section 114.083(d).[10] Therefore, by virtue of section 114.083(d), Williams would be personally liable for both the conversion and violation of Property Code section 93.002(b) found by the jury.

---

[10] In construing a statute, our primary objective is to give effect to the Legislature's intent. The plain meaning of the text best expresses legislative intent unless context suggests otherwise or the plain meaning leads to absurd results. *Carlson Law Firm, PC v. Austin Carrizales Law, PLLC,* No. 07-20-00143-CV, 2021 Tex. App. LEXIS 5106, at *3–4 (Tex. App.—Amarillo June 25, 2021, pet. denied) (mem. op.).

Williams argues that Kennedy's prior "material" breach of the MSA relieved him of his obligations as landlord. We have previously rejected this argument in our analysis of earlier issues. We overrule Williams's seventh issue.

II. Kennedy's Appeal

(a) Is Kennedy entitled to conditional appellate attorney's fees?

By cross-appeal, Kennedy brings two issues challenging the judgment. His first issue contends that the jury's failure to award any contingent appellate attorney's fees for potential appeals to the court of appeals and the Supreme Court of Texas was against the great weight and preponderance of the evidence. We disagree and overrule this issue.

Kennedy's argument relies on authority holding that when an award of attorney's fees is mandatory, a trial court has no discretion to deny such fees when presented with sufficient evidence. *See Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex.1998); *Brent v. Field*, 275 S.W.3d 611, 622 (Tex. App.–Amarillo 2008, no pet.). Indeed, all of the authority underlying Kennedy's argument involves mandatory fees—either under section 38.001 of the Civil Practice and Remedies Code or due to a contractual provision awarding mandatory fees to the prevailing party. Under such circumstances, the Supreme Court of Texas has held that "[i]f trial attorney's fees are mandatory under section 38.001, then appellate attorney's fees are also mandatory when proof of reasonable fees is presented." *Ventling v. Johnson*, 466 S.W.3d 143, 154 (Tex. 2015).

However, Kennedy does not demonstrate, nor do we find, any authority indicating that a tenant's recovery of attorney's fees under Property Code § 93.002(g) is mandatory.

13

*See* Tex. Prop. Code Ann. § 93.002 (g) ("If a landlord . . . violates this section, the tenant *may* . . . recover from the landlord . . . reasonable attorney's fees . . . .") (emphasis added). When fees are discretionary, the jury is free to find that none of a party's conditional appellate attorney's fees are reasonable or necessary. *Matter of Estate of Stewart*, No. 04-20-00103-CV, 2021 Tex. App. LEXIS 3897, at \*47–48 (Tex. App.—San Antonio May 19, 2021, pet. denied) (mem. op.) (upholding award of zero fees because suit was brought under the Texas Declaratory Judgments Act).

Moreover, sufficient proof of a conditional award of appellate attorney's fees depends on evidence "about the *services* [the party] reasonably believes will be necessary to defend the appeal and a reasonable hourly rate for those services." *Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 355 (Tex. 2020) (emphasis added). In support of his claim for fees, Kennedy's attorney merely stated that "If this matter were appealed, in my opinion, then an additional attorney's fees for appeal would be $7,000 on appeal," without offering any evidence about the services he reasonably believed would be necessary to defend the judgment on appeal. Given this lack of evidence, we cannot say the jury lacked the freedom to find such potential future fees would be unreasonable or unnecessary. The trial court did not err in rejecting such fees as well.

We overrule Kennedy's first issue.

### (b) Should the judgment contain a statement that Williams acted with malice?

Kennedy's second issue contends the trial court erred by omitting the jury's malice finding from the judgment. The jury unanimously found, by clear and convincing

14

evidence, that the harm to Kennedy due to conversion or unlawful removal of the squeeze chute resulted from malice. The jury awarded nothing in exemplary damages.

"When the answer to a jury question cannot alter the effect of the verdict, the reviewing court considers that question immaterial." *Thota v. Young*, 366 S.W.3d 678, 694 (Tex. 2012). Kennedy argues that Section 523(a)(6) of the Bankruptcy Code bars a debtor's discharge of a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Therefore, he reasons, inclusion of the malice finding is necessary because it could prevent Williams from discharging such debt in the event of his bankruptcy.

The parties agree that omitting the malice finding from the judgment was error. We, instead, examine only whether this error was harmless. *See Thota*, 366 S.W.3d at 694 (holding that error in submitting a contributory negligence question was harmless given the jury's other findings).

Under § 523(a)(6), the only non-dischargeable debt would be Kennedy's $568.16 expense in recovering the converted property. *See Collins v. Zolnier (In re Zolnier)*, No. 21-20260, 2021 U.S. App. LEXIS 35857, at *13–14 (5th Cir. 2021) (holding that the amount of non-dischargeable debt under 11 U.S.C. § 523(a)(6) is equal to the injury caused). *See also In re Modicue*, 926 F.2d 452, 453 (5th Cir. 1991). The jury awarded no damages for the wrongful removal of the squeeze chute and no exemplary damages. Assuming a future hypothetical bankruptcy, therefore, Williams would arguably be barred from discharging the $568.16 conversion award.

15

However, even assuming the trial court erred by omitting the malice finding, such error was harmless. Williams has made a cash deposit in lieu of supersedeas bond covering the full judgment, including the conversion damages. These funds will satisfy the conversion damages, mooting any concern about discharge in bankruptcy. Kennedy identifies no other allegedly non-dischargeable debts that the cash deposit would not satisfy.

Our conclusion that omitting the malice finding was not reversible error should not be construed as determining that Williams did not act with malice or as suggesting that a future bankruptcy court should disregard the jury's unchallenged finding. We hold only that, given the arguments presented to this Court, no reversible error exists. *See* TEX. R. APP. P. 44.1(a)(1).

Kennedy's second issue is overruled.

### Conclusion

With regard to Williams's issues on appeal, we conclude the trial court reversibly erred in awarding Kennedy $6,000 in attorney's fees for Williams's conversion of Kennedy's personal property, and accordingly render judgment that Kennedy take nothing by this fee award. In all other respects, we affirm the judgment of the trial court.

Lawrence M. Doss
Justice

16